505 So.2d 1388 (1987)
PACIFIC TELEPHONE AND TELEGRAPH COMPANY, Appellant,
v.
Signey GEIST, etc., Appellee.
No. 86-2194.
District Court of Appeal of Florida, Fifth District.
April 30, 1987.
*1389 David J. Jones and Kathleen Hendrickson, of Rush, Marshall, Bergstrom, Reber, Gabrielson & Jones, P.A., Orlando, for appellant.
Lynn James Hinson, of Dean, Mead, Egerton, Bloodworth, Capouano & Bozarth, P.A., Orlando, for appellee.
ORFINGER, Judge.
Pacific Telephone and Telegraph Company (Pacific) appeals an order denying its motion to dismiss for lack of jurisdiction. Fla.R.App.P. 9.130(a)(3)(C)(i). On this appeal, Pacific argues that (1) the plaintiff's complaint failed to allege a basis for long-arm jurisdiction and (2) that the trial court's exercise of its long-arm jurisdiction denied Pacific due process of law. We reverse.
Pacific, a California corporation, entered into a contract with another corporation, Ap-Tel, by which Ap-Tel was to provide certain services for Pacific. The negotiation and execution of the contract occurred in California and performance of the services was to take place in California and Nevada. Payment for these services was to be made to Ap-Tel at a California address.
The contract specified that Ap-Tel could assign its right to payments on the contract without Pacific's prior written consent, but that any assignment by Ap-Tel would be void to the extent that it attempted to impose upon Pacific any obligation in addition to payment of money, or to the extent that it precluded Pacific from negotiating or settling with Ap-Tel "in all matters pertaining to this Agreement." Finally, the contract designated California law as governing the agreement.
On June 4, 1984, Ap-Tel assigned its present and future rights to payment to National Factors (National), a Florida limited partnership with its principal place of business in Orlando, Florida. Ap-Tel subsequently gave Pacific written notice of the assignment, and Pacific acknowledged receipt to National. In these acknowledgments, Pacific agreed to make all payments to National and to inform National about any claims that might affect payment.
In May of 1986, National filed a complaint against Pacific in the Circuit Court of Orange County, Florida for moneys due under the contract. As a basis for jurisdiction in Florida, the complaint alleged that Pacific had breached the contract in Florida by failing to make the payments which were due in this state.
Pacific moved to quash service of process, dismiss for lack of jurisdiction, and dismiss for forum non conveniens, and filed affidavits in support of its motion. The undisputed affidavits disclose that Pacific is engaged in the business of providing communications services in the state of California; that it does not maintain an office, warehouse or other place of business in Florida; nor does it have any officers, agents or employees in Florida. It is further shown that Pacific has no real or personal property or bank accounts in Florida, makes no sales, solicits no business, and conducts no sales activity of any kind in Florida. Pacific has not appointed any representative for service of process in Florida, nor does it hold any license in Florida which would allow it to conduct any business activity in Florida.
*1390 Pacific first asserts that National failed to allege sufficient facts to authorize the court's jurisdiction. Section 48.193(1)(g), Florida Statutes, provides for jurisdiction over a nonresident who breaches a contract by failing to perform acts required by the contract to be performed in the state.[1] National's complaint alleges that it is the assignee of a contract entered into by Pacific; that Pacific was given notice of the assignment, and acknowledged National's right to payment; and that payments were due to be made in Florida.
However, even if the allegations of the complaint which indicate that the breach took place in Florida are sufficient to meet the literal requirements of section 48.193(1)(g), (a point we need not decide) the assumption of jurisdiction by a Florida court in this case would not pass constitutional muster. To comply with the due process requirements of the Fourteenth Amendment to the United States Constitution, a defendant must have "minimum contacts" with the forum state such that maintenance of the suit does not offend traditional notions of fair play and substantial justice. International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Thus, even though a nonresident defendant may appear to fall within the literal reading of a long arm statute, in a given factual situation a plaintiff may not constitutionally apply the statute to obtain jurisdiction in the absence of the requisite minimum contacts by the defendant with the forum state. Scordilis v. Drobnicki, 443 So.2d 411 (Fla. 4th DCA 1984); Osborn v. University Society, Inc., 378 So.2d 873 (Fla. 2d DCA 1979). The defendant's conduct and connection with the forum state must be such that he should reasonably anticipate being haled into court there. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).
In Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239-40, 2 L.Ed.2d 1283 (1958) the court explained when it is that a party might reasonably anticipate out-of-state litigation:
"The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its law." [Emphasis added].
357 U.S. at 253, 78 S.Ct. 1239-40.
In Burger King Corporation v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), the Supreme Court made it clear that
If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot. The Court long ago rejected the notion that personal jurisdiction might turn on "mechanical" tests, ... or on "conceptualistic . .. theories of the place of contracting or of performance,"... . Instead, we have emphasized the need for a "highly realistic" approach that recognizes that a "contract" is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." ... It is these factors  prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealings  that must be evaluated in determining whether the defendant *1391 purposefully established minimum contacts within the forum. [Citations omitted] [Emphasis in original].
105 S.Ct. at 2185, 2186.
Sub judice, there is nothing about the original transaction between Pacific and Ap-Tel by which Pacific might reasonably anticipate being haled into a Florida court. National contends that because Pacific agreed that Ap-Tel could assign its right to receive payment, and because Pacific agreed to make payments in Florida, it became foreseeable that the failure to make payments as agreed would cause injury in Florida, and that Pacific could thus reasonably anticipate being haled into court there. But the mere foreseeability of injury in a foreign jurisdiction is not a sufficient benchmark for exercising personal jurisdiction. World-Wide Volkswagen, 444 U.S. at 295, 100 S.Ct. at 566.
The relationship between Pacific and National is fortuitous, brought about by the unilateral action of Ap-Tel.[2] Also fortuitous is the fact that Ap-Tel assigned its payment rights to a Florida factor. Pacific was in no way involved in the transaction and received no benefit from it. Certainly, the assignment was not an act by which Pacific availed itself of the privilege of conducting activities in Florida. It would be unrealistic and completely unreasonable to believe that, by its original agreement that Ap-Tel could assign its right to payment, it also agreed to submit itself to the jurisdiction of any one or more of the remaining 49 states where Ap-Tel might find a factor willing to buy its receivables. "A judicial holding that solely by failing to make contractual payments due in any foreign state the payor impliedly consents to submit himself to the jurisdiction of such foreign state ... exceeds the bounds of common sense and reason and of constitutional due process." National Equipment Leasing, Inc. v. Watkins, 471 So.2d 1369, 1370-71 (Fla. 5th DCA 1985) (Cowart, J., concurring).
National relies on this court's decision in Kane v. American Bank of Merritt Island, 449 So.2d 974 (Fla. 5th DCA 1984)[3] in support of its argument that Pacific's contractual obligation to pay money in Florida is sufficient to establish minimum contacts. Whether or not Kane is still good authority in the light of Burger King need not be decided here. Suffice it to say that Kane is distinguishable from the present case. In Kane, the defendants executed a guaranty contract to a Florida Bank to induce the bank to loan money to Florida residents. In reliance on the guaranty and without which the loan would not have been made, the bank made a loan, on which the debtors subsequently defaulted. Given the fact that the guarantors executed the guaranty to induce the bank to extend credit, the court stated that the guarantors should have reasonably anticipated that they would be haled into court in the forum where their activity caused an effect: the loan. Thus, it was held that the guarantors engaged in purposeful conduct in connection with the Florida forum which rendered it foreseeable that they would be brought into court in Florida in the event *1392 they were called upon to honor the guaranty.
In contrast, Pacific has not made any purposeful contact with Florida. Its only connection with Florida was its duty to make payments to the assignee of Ap-Tel. Nothing in the original contract or in Pacific's subsequent conduct demonstrates that Pacific intended to "invoke the benefits and protections of" Florida law. Pacific's connection with Florida is fortuitous and random. It is the result of the unilateral activity of Ap-Tel in assigning its right to payments to a partnership that resides in Florida. For all Pacific could control, Ap-Tel could just as easily have assigned its rights to a factor in another state.
Pacific was not constitutionally subjected to the jurisdiction of Florida, and the trial court erred in denying its motion to dismiss.
REVERSED.
UPCHURCH, C.J., and COWART, J., concur.
NOTES
[1] Section 48.193(1)(g), Florida Statutes (1985), states in pertinent part:

(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself and, if he is a natural person, his personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
.....
(g) Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state.
[2] The Due Process Clause has been held not to permit the exercise of personal jurisdiction over an out-of-state automobile dealer whose only tie to the forum resulted from the customer's decision to drive there, World-Wide Volkswagen, supra; over a divorced husband sued for child support payments whose only affiliation with the forum was created by his former spouse's decision to settle there, Kulko v. California Superior Court, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978); and over a trustee whose only connection with the forum resulted from the settlor's decision to exercise her power of appointment there. Hanson v. Denckla, supra. Since Burger King was decided, several Florida district courts of appeal have held that an out-of-state resident did not subject himself to the jurisdiction of the Florida courts merely because contractual payments were to be made in Florida. See Reinauer v. Greenman Advertising Associates, 503 So.2d 975 (Fla. 4th DCA 1987); American Vision Center, Inc. v. National Yellow Pages Directory Services, 500 So.2d 642 (Fla. 2d DCA 1986); Seville Financial, Inc. v. Nationwide Marketing Associates, 488 So.2d 658 (Fla. 4th DCA 1986).
[3] Cf., Herman v. Sunset Commercial Bank, 481 So.2d 98 (Fla. 3d DCA 1986), a case decided after Burger King which appears to reach an opposite result, although no detailed facts are disclosed.