GLICKSTEIN, Judge.
Amfac, Inc., a Hawaii corporation with its principal place of business in California, appeals an order denying its motion to dismiss for lack of in personam jurisdiction. Plaintiffs/appellees Bernard and Rhoda Weinstein filed suit against Amfac in Palm Beach County Circuit Court for breach of an employment and consulting agreement. Amfac moved to dismiss on the grounds that the court lacked in personam jurisdiction of Amfac because the subject agreement did not require Amfac to perform any act in Florida, and that plaintiffs failed to show that Amfac had minimum contacts in Florida such as would constitutionally subject it to Florida jurisdiction. The motion was denied and Amfac appealed. We reverse and remand.
In 1982, when Amfac bought out Bernard Weinstein’s interest in Cameo Stores, Inc., a Pennsylvania corporation operating retail clothing stores in Pennsylvania and several nearby mid-Atlantic states, Amfac and Weinstein entered into an employment and consulting agreement. The agreement took cognizance of the fact that Weinstein was president of Cameo, and provided that Amfac would employ Weinstein in some kind of executive capacity at figures stated in the agreement, and after a certain period of time he would become an independent contractor/consultant for the rest of his life, at a stated annual figure. In the event he predeceased his wife, she would be paid a certain annual sum until her death or for ten years after Weinstein’s death, whichever came first. According to its terms, the agreement was made and entered into in Pennsylvania, and is to be construed under its laws. The agreement provides in certain circumstances for written notices to Weinstein at his address as it shall appear on the company’s payroll records, with copies to his lawyer in Philadelphia.
At the hearing on appellant’s motion to dismiss for lack of in personam jurisdiction, Weinstein testified he was in constant communication with the young man who succeeded him as president after Weinstein was permanently residing in Florida. The communication occurred from twice a week to once in two weeks. This went on steadily for a period of about two years. The new president would sometimes call Wein-stein in Florida from Pennsylvania for advice on problems that would arise in the business. Weinstein did not stop performing these consulting services until the checks stopped coming.
Weinstein testified he also was called by an Amfac vice president, William Dudley, to meet him in Tampa. The two of them visited various locations in the Tampa area in connection with possible acquisition of a company there. He did not remember just when this occurred. During the June to October period Weinstein would reside at his summer home in New Jersey.
Weinstein had previously filed an affidavit in opposition to Amfac's motion to dismiss. In it he said that during the consultancy Amfac paid him, under the agreement, in Florida, except when he was vacationing in New Jersey in the summer; that the company knew that he would be performing his consulting services from his Florida home except when at his vacation home in New Jersey; that the contract says all payments are to be sent to his home [but the location thereof is not stated]; and that appellee had a home in Florida from March 1980.
William Dudley’s affidavit states that at the time of the negotiations for acquisition of Weinstein’s enterprise he understood Weinstein’s home to be in Pennsylvania. He knew Weinstein also owned condominiums in Florida and New Jersey, but neither Weinstein nor any one else ever told him Weinstein’s permanent residence was in Florida or that Weinstein planned to move there permanently. He said he had no expectation Weinstein would work for Amfac in Florida unless Amfac expanded the Cameo Stores operations into the Florida market — which has not happened. According to Dudley’s affidavit, Dudley and Weinstein visited some stores in Florida in 1983 or 1984 with an eye toward possible acquisition, and Weinstein also visited another store in Miami with the same purpose, while he was still an active employee, *1257 but none of the stores was purchased. Dudley, who has been an Amfac vice president with varying responsibilities at all times pertinent, said the firm has never during his employment engaged in sales, solicitations or other business activity in this state.
An affidavit of Richard D. Baum, Am-fac’s vice president of employee relations, states Weinstein’s employment was at all times in Pennsylvania and never in Florida, his residence during the employment having been in Jenkintown, Pennsylvania. The affidavit refers to Weinstein’s W-2 forms for 1983, 1984 and 1985 which show that address. He avers that the contract did not require Weinstein to perform services in Florida; that while Amfac had occasionally mailed checks to Weinstein in Florida since his retirement, it has undertaken no contractual obligations to him in Florida; and that it was Amfac’s intention when it entered the agreement with Weinstein that the contract be performed in Pennsylvania.
It is quite clear that appellee relies on section 48.193(l)(g), Florida Statutes (1985), as the basis for the trial court’s jurisdiction over appellant. Under that section a nonresident of Florida submits himself to Florida jurisdiction for a cause of action arising from breaching a contract in this state by failing to perform acts required by the contract to be performed in this state. Weinstein contends that by stopping the payment of consulting fees to him at his Florida residence Amfac breached the agreement with him, omitting to perform the act of paying him here. Appellant contends that, inasmuch as the agreement does not call for appellant to perform any acts in Florida, the long-arm statute does not extend Florida’s jurisdiction to appellant; and that, regardless of that point, the constitutional minimum contacts requirement is not met.
It has been said that the statutory section which provides for in personam jurisdiction where a cause of action arises from failure to perform certain acts required by a contract to be performed in this state must be strictly construed in order to guarantee compliance with constitutional due process requirements. See Cosmopolitan Health Spa, Inc. v. Health Industries, Inc., 362 So.2d 367 (Fla. 4th DCA 1978). The plaintiff has the burden of pleading sufficient material facts to establish a basis for exercise of such jurisdiction by alleging a failure to perform in Florida, which failure creates the cause of action. Id. at 368.
In its order, the trial court found that Weinstein showed that his activities on behalf of Amfac were performed in Florida and that Amfac paid him here. The record supports both conclusions. The nonperformance of Amfac was its subsequent nonpayment. There appears to be no question that the parties’ ultimate course of dealing was not specifically discussed in their written agreement in any jurisdictional sense. Only Pennsylvania was involved when the agreement was negotiated and executed as well as during a period of time of performance by Weinstein as an employee. The question then becomes what is the jurisdictional impact of Weinstein’s subsequent, unilateral move to Florida?
We see a substantial difference between this case and Burger King Corporation v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), where the court concluded that the defendant reached out beyond Michigan to Florida. Here, appellant had not contemplated any but marginal contacts with Florida when the contract was made; and the contacts in fact remained marginal. Appellant received no benefits from Florida that would justify its being held subject to a Florida court’s jurisdiction. The business purchased by appellant was centered in Pennsylvania; the contract was negotiated in Pennsylvania; it was to be construed according to Pennsylvania law; and Weinstein during the period of his continued employment with the appellant, continued to reside in Pennsylvania and to be paid there.
To use the language of Burger King Corporation v. Rudzewicz, this defendant’s contacts with Florida were not purposeful availment but random, fortuitous or attenuated. See 471 U.S. at 472, 105 S.Ct. at 2182. Such contacts could have been anywhere on the globe Weinstein *1258 chose to spend his later years — so long as communication for consultation remained feasible between him and the company. We cannot support equating the circumstances here with a contention that this defendant reasonably anticipated being haled into court in Florida. See, e.g., Lacy v. Force V Corporation, 403 So.2d 1050, 1054 (Fla. 1st DCA 1981). See also Patterson v. Dietze, Inc., 764 F.2d 1145 (5th Cir.1985).
Weinstein is undoubtedly inconvenienced by our decision, which may appear to add insult to injury, if his claim is meritorious. However, Pennsylvania, not Florida, is the appropriate forum to rectify that injury, because of appellant’s election to have contacts there, and the lack of same here.
WALDEN and GUNTHER, JJ., concur.