553 So.2d 346 (1989)
Jack O. SEGAL, Appellant,
v.
Madelyn RUSSELL, F/K/a Madelyn N. Segal, Appellee.
No. 89-1124.
District Court of Appeal of Florida, Fourth District.
December 6, 1989.
A. Matthew Miller of Miller, Schwartz & Miller, P.A., Hollywood, for appellant.
Paul V. DeBianchi of Paul V. DeBianchi, P.A., Fort Lauderdale, for appellee.
DOWNEY, Judge.
Appellant, Jack O. Segal, seeks reversal of a non-final order denying his motion to dismiss for lack of personal jurisdiction and to quash service of process under the Florida long arm statute, section 48.193(1)(g), Florida Statutes (1987). Said order is erroneous and we reverse.
While residents of the State of New York, the parties executed a marital settlement agreement. Thereafter, they were divorced in Mexico on August 25, 1967. The Mexican decree approved the agreement, and specifically provided that it would survive the decree, and continue in full force and effect thereafter. Appellant agreed that, during his lifetime, he would pay alimony to appellee during her lifetime, or until she remarried, at the address of the wife stated in the agreement, or such other address as she may designate in writing.
Appellee moved to Florida in 1972 and appellant eventually moved to California. Appellant was notified of appellee's change of address and payments were received by her in Florida until July or August of 1988. Appellee then filed suit against appellant for, among other things, breach of contract, and attempted service on appellee under the authority of section 48.193(1)(g), Florida Statutes (1987). An affidavit filed by appellee in support of long arm jurisdiction stated that appellant had written songs that were performed and broadcast in the State of Florida, which generated royalties benefitting appellant, and that such royalties were collected and transferred to New York, where they were collected by certain organizations and divided between appellant and appellee in accordance with their separation agreement.
Appellant filed an affidavit in which he denied owning any assets or ever doing business in Florida. He denied any judicially cognizable ties to the state, and any activity which could be construed as invoking the benefits and protections of the laws of this state. Thus, he contends the long-arm statute cannot be resorted to for jurisdiction in this case.
*347 Paraphrased, section 48.193(1)(g) provides that any person who breaches a contract in this state, by failing to perform acts required by the contract to be performed in this state, thereby submits himself to the jurisdiction of the courts of this state for any cause of action arising therefrom. A literal reading of said statutory section might lead one to believe that it covers the present case. However, a determination of whether personal jurisdiction can be properly acquired over a person involves a dual inquiry: whether the requirements of the long arm statute have been properly alleged, and whether the person has sufficient minimum contacts with the state to satisfy due process requirements. American Vision Center, Inc. v. National Yellow Pages Directory Service, Inc., 500 So.2d 642 (Fla.2d DCA 1986).
It appears that the allegation in the instant complaint that appellant failed to make payment in the State of Florida (as required under the contract pursuant to the language that payment would be to whatever address appellee designated) is sufficient to meet the literal requirements of section 48.193(1)(g); however, whether appellant had sufficient minimum contacts with Florida to pass constitutional muster is less clear. As stated in Pacific Telephone and Telegraph Company v. Geist, 505 So.2d 1388, 1390 (Fla. 5th DCA 1987):
To comply with the due process requirements of the Fourteenth Amendment to the United States Constitution, a defendant must have "minimum contacts" with the forum state such that maintenance of the suit does not offend traditional notions of fair play and substantial justice. International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Thus, even though a nonresident defendant may appear to fall within the literal reading of a long arm statute, in a given factual situation a plaintiff may not constitutionally apply the statute to obtain jurisdiction in the absence of the requisite minimum contacts by the defendant with the forum state. Scordilis v. Drobnicki, 443 So.2d 411 (Fla.2d DCA 1984); Osborn v. University Society, Inc., 378 So.2d 873 (Fla.2d CA 1979). The defendant's conduct and connection with the forum state must be such that he should reasonably anticipate being haled into court there. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).
The court went on to quote Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239-1240, 2 L.Ed.2d 1283 (1958), wherein the court stated that it "is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Further, the court pointed out that, in Burger King Corporation v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 2185-2186, 85 L.Ed.2d 528, 534-535 (1985), the Supreme Court made it clear that:
If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot.
Since Burger King was decided, several other Florida Courts have held that an out-of-state resident did not subject himself to jurisdiction in Florida merely because contractual payments were to be made in Florida. E.g., Reinauer v. Greenman Advertising Associates, 503 So.2d 975 (Fla. 4th DCA 1987); American Vision Center, Inc. v. National Yellow Pages Directory Services, 500 So.2d 642 (Fla.2d DCA 1986), rev. denied, 508 So.2d 14 (Fla. 1987); Seville Financial, Inc. v. Nationwide Marketing Associates, 488 So.2d 658 (Fla. 4th DCA 1986).
The only real contact appellant had in Florida was the payments that he made here to appellee. He did not engage in the kind of purposeful conduct in connection with Florida that would render it foreseeable that he would be brought into court in Florida (he had no property, offices, bank accounts, telephones, etc., here). While it may have been foreseeable that the failure to make the payments as agreed would cause injury in Florida, the mere foreseeability of injury in a foreign jurisdiction is *348 not a sufficient benchmark for exercising personal jurisdiction. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 295, 100 S.Ct. 559, 566, 62 L.Ed.2d 490 (1980). "A judicial holding that solely by failing to make contractual payments due in any foreign state the payor impliedly consents to submit himself to the jurisdiction of such foreign state ... exceeds the bounds of common sense and reason and of constitutional due process." National Equipment Leasing, Inc. v. Watkins, 471 So.2d 1369, 1370-1371 (Fla. 5th DCA 1985) (Cowart, J., concurring).
In Amfac, Inc. v. Weinstein, 523 So.2d 1255 (Fla. 4th DCA 1988), similar to the instant case, an agreement was alleged to provide that all payments were to be sent to the payee's home, but the location thereof was not specifically stated. In that case, Weinstein sold his Pennsylvania business to Amfac and the parties entered into an employment and consulting agreement, whereby Weinstein would receive a stated annual salary for consulting services over a stated period of time. The contract was negotiated and executed in Pennsylvania and was to be construed under its laws. Weinstein eventually moved to Florida and, over several years, received payments here. When the payments stopped, he sued Amfac, a non-resident corporation, for breach of contract, and attempted service under section 48.193(1)(g). Weinstein contended that, by stopping the payment of consulting fees to him at his Florida residence, Amfac had breached the agreement with him, omitting to perform the act of paying him here. Amfac contended that, inasmuch as the agreement did not call for it to perform any acts in Florida, the long arm statute did not extend Florida's jurisdiction to appellant; and that, regardless of that point, the constitutional minimum contacts requirement was not met. This court pointed out that Amfac had not contemplated any but marginal contacts with Florida, the contacts were marginal, and Amfac received no benefits from Florida that would justify its being held subject to a Florida court's jurisdiction. This court stated:
To use the language of Burger King Corporation v. Rudzewicz, this defendant's contacts with Florida were not purposeful availment but random, fortuitous or attenuated. See 471 U.S. at 472, 105 S.Ct. at 2182. Such contacts could have been anywhere on the globe Weinstein chose to spend his later years  so long as communication for consultation remained feasible between him and the company. We cannot support equating the circumstances here with a contention that this defendant reasonably anticipated being haled into court in Florida. See, e.g., Lacy v. Force V Corporation, 403 So.2d 1050, 1054 (Fla. 1st DCA 1981). See also Patterson v. Dietze, Inc., 764 F.2d 1145 (5th Cir.1985).
523 So.2d at 1257-1258. This court concluded that Pennsylvania was the appropriate forum.
Further, the fact that the minor children of the parties in the instant case were attending, or had attended, public schools in Florida while the mother resided here, and that the father communicated with the children here, does not create such contacts with Florida as to make appellant amenable to jurisdiction. Girau v. Girau, 544 So.2d 1117 (Fla. 3d DCA 1989); Gioia v. Gioia, 435 So.2d 367 (Fla. 4th DCA 1983).
Accordingly, we hold that appellee failed to show sufficient minimum contacts with Florida to enable the courts of Florida to obtain jurisdiction over appellant under section 48.193(1)(g), Florida Statutes (1987).
LETTS and DELL, JJ., concur.