CLASSIC LINES, INC., Plaintiff,

v.

NATIONAL COACH CORPORATION, Defendant.

NATIONAL COACH CORPORATION, Third–Party Plaintiff,

v.

CONNECTICUT LIMOUSINE SERVICE, INC., a Connecticut Corporation, d/b/a and a/k/a Connecticut Limousine Parlor Car, Parlor Car Connecticut Limousine Group, and/or Schiavone Transportation Corp., and Does 1 through 20, inclusive, Third–Party Defendants.

No. 89–0174–CIV.

United States District Court, S.D. Florida.

March 27, 1990.

Jeffrey C. Roth, P.A., for third-party plaintiff.

Steel, Hector & Davis, Jay Starkman, Miami, Fla., for third-party defendants.

## ORDER

HOEVELER, District Judge.

This cause is before the Court on a motion by Connecticut Limousine Service to dismiss the third-party complaint filed against it on the grounds that this Court lacks *in personam* jurisdiction. Federal Rule of Civil Procedure 12(b)(2).

## I. BACKGROUND

Plaintiff Classic Lines ("Classic") contracted with Defendant National Coach Corporation ("National") for the purchase of twelve used buses in order to form a fleet with which to serve bingo halls in Florida and California. Classic brings this action for breach of contract against National, alleging that National failed to deliver twelve used buses in fully operational condition, and in fact delivered only seven, inoperative buses.

The plot then thickens, for it is at this juncture that National points the finger of blame at its would-be third-party defendant: Connecticut Limousine Service, Inc. ("Connecticut Limo") in the form of a third-party complaint alleging fraud, breach of contract, indemnity, and negligent misrepresentation. It appears that the twelve used buses that National had contracted to deliver to Classic were in fact buses that Connecticut was to deliver to National. Therein lies the rub; National claims that it was unable to deliver the twelve buses to Classic because the anti-pollution devices of the buses that Connecticut Limo delivered to National had been disconnected, thus rendering them inoperable in California and Florida.

The issue before the Court today does not, however, concern the plight of those twelve used buses, or the bingo halls they were commissioned to fill. Rather, in an effort to avoid National's finger of blame, Connecticut Limo, (a Connecticut corporation), asserts that the reach of the Floridian long-arm statute is not quite long enough to bring it within the jurisdiction of this Court.

## II. DISCUSSION

Determining whether this Court may assert personal jurisdiction over Connecticut Limo involves a two-stage analysis. First, the Court must ascertain whether the requirements of the applicable state long-arm statute are satisfied. Then, only if the Court finds that jurisdiction would lie under the long-arm, is it necessary to decide whether such a reach of the long-arm would offend the Due Process clause of the Fourteenth Amendment. *See Alexander Proudfoot Co. World Hqtrs. v. Thayer*, 877 F.2d 912, 914–16 (11th Cir.1989).

Two provisions of Florida's long-arm statute are relevant to National's attempt to bring Connecticut Limo within the jurisdiction of this Court. Section 48.193(1)(b) provides for the assertion of personal jurisdiction over someone who has committed a tortious act within the state. Section 48.-193(1)(g), would subject someone to the jurisdiction of this Court for the failure to perform any act required by contract to be performed within the state. National maintains that Connecticut Limo is subject to this Court's jurisdiction under both provisions of the long-arm, each of which is examined in turn, below.

### A. *Tortious Act*

Sec. 48.193(1)(b) provides for the exercise of personal jurisdiction over defendant for a tortious act committed within the state. National does not contend that Connecticut

Limo was physically present in Florida, but argues that the statute merely requires that the place of injury be within Florida. *See e.g., International Harvester Co. v. Mann,* 460 So.2d 580, 581 (1st DCA 1984) (emphasis in original) citing *Lee B. Stern & Co., LTD. v. Green,* 398 So.2d 918 (3d DCA 1981); *Bangor Punta Operations, Inc. v. Universal Marine Co.,* 543 F.2d 1107 (5th Cir.1976) and *Rebozo v. Washington Post Co.,* 515 F.2d 1208 (5th Cir.1975). However, an examination of the facts shows that there was no *Florida* injury.

■ National claims that Connecticut had rendered the twelve buses inoperable in Florida and California by disconnecting factory-installed smog equipment, and thus concludes that the tortious injury occurred in Florida. In support of this position, National submits the affidavit of Mr. Lee. S. Kosby, the Vice President of Finance for National who states that Connecticut Limo knew that the buses were intended to be used in California and Florida, and "specifically warranted and represented that the used buses would be fully and properly operational in Florida and in California." Affidavit of Mr. Kosby at 3. Accepting Mr. Kosby's words as true, the flaw in National's reasoning is that the alleged tort injury nevertheless occurred in Connecticut, not Florida. The relationship between Connecticut Limo and National was initiated, negotiated, and consummated in Connecticut where, after two days of inspection, National actually took delivery of the buses. Affidavit of Mr. Logan at 2–3. In short, Connecticut Limo's allegedly fraudulent promises uttered in Connecticut about the buses' performance in Florida cannot provide National the vehicle with which to transport Connecticut Limo into the reach of Florida's jurisdiction.

### B. *Breach of Contract*

In order to bring Connecticut Limo under Section 48.193(1)(g) of the long-arm, there must have been some failure on the part Connecticut Limo to fulfil an act or acts required by the contract to be performed in Florida. Fla.Stat. 48.193(1)(g) (1989). "Florida Courts require substantial proof

before they are willing to authorize *in personam* jurisdiction over a non-resident defendant under 48.193(1)(g)." *Moltz v. Seneca Balance, Inc.,* 606 F.Supp. 612, 615 (S.D.Fla.1985). The plaintiff initially bears the burden of alleging sufficient facts to satisfy 48.193(1)(g) as matter of law. *Id.* at 615; *Amfac, Inc. v. Weinstein,* 523 So.2d 1255, 1257 (4th DCA 1988). Having done so, the burden then shifts to the defendant to make a prima facie showing by affidavit that the long-arm statute is inapplicable. *See, Cosmopolitan Health Spa, Inc. v. Health Industries, Inc.,* 362 So.2d 367, 368 (4th DCA 1978); *Moltz,* at 615; *Amfac, Inc.,* at 1257. Where the defendant establishes a prima facie showing against the exercise of *in personam* jurisdiction, the burden is once again upon the plaintiff "to sustain its assertions by affidavit or other proof; [the plaintiff] may not rely on a mere reiteration of the allegations contained in the complaint." *Cosmopolitan Health Spa, Inc., supra,* at 368.

■ The Purchase and Sale Agreement between Connecticut Limo and National makes no reference to any acts to be performed in Florida by either National or Connecticut Limo. The affidavits submitted by Connecticut Limo indicate that performance under the Purchase and Sale Agreement was contemplated to occur solely in Connecticut, where the buses were inspected, paid for, and delivered. *See,* Affidavit of Mr. Logan at 2–3; and Affidavit of Mr. Flynn at 3. The affidavit of Mr. Krosby supplied by National does allege that Connecticut Limo had "warranted" that the buses would be fully operational in Florida. Assuming, for the purposes of this motion, that Connecticut Limo had made such an oral guarantee to National; this alone is still insufficient to subject Connecticut Limo to Florida jurisdiction, for the warranty pertains to the condition of the buses at their delivery in Connecticut. Without a showing by National of some enforceable agreement between Connecticut Limo and Classic, or some provision within the National/Connecticut Limo Purchase and Sale Agreement imposing a duty upon Connecticut Limo to deliver, or actually operate the buses in Florida, there

is no "act required by the contract" to be performed by Connecticut Limo in Florida. Connecticut Limo is therefore not amenable to service under Section 48.193(g).

### III. CONCLUSION

Having determined that *in personam* jurisdiction cannot be exercised over Connecticut Limo under the Florida long-arm statute, it is unnecessary to investigate whether an exercise of personal jurisdiction over Connecticut Limo would violate the Due Process requirements of the Fourteenth Amendment.

For the reasons discussed above, Connecticut Limousine's Motion to dismiss National Coach's Third–Party complaint is granted. It is hereby ORDERED AND ADJUDGED that the Third–Party complaint filed by National Coach as defendant and third-party plaintiff is dismissed. National Coach may, however, if it so chooses, file an amended Third–Party claim within thirty days.

DONE AND ORDERED.