KLINGENSMITH, J.
Appellant Deborah Olson (“Olson”), a resident of Minnesota, was sued by appel-lees Daniel Robbie and Timothy Robbie (“the Robbies”) for breach of contract. The parties are the children of Joe Robbie, founder and longtime owner of the Miami Dolphins. The Robbies alleged that the trial court had jurisdiction over Olson under Florida’s long-arm statute because Olson failed to perform acts that were required to be performed in Florida pursuant to a contract, and that Olson was engaged in activities within the State of Florida and had significant ties to the state. Olson moved to dismiss the complaint for lack of jurisdiction, which was denied by the trial court. Based on the law as applied to the facts of this case, we reverse.
To settle disputes about their father’s companies after his death, the siblings entered into a Shareholder Agreement (“Agreement”) for the Miami Sports Corporation (“MSC”), a Florida corporation that included Olson as a member of its Board of Directors. MSC owned 12.458% of the Dolphins and 100% of other subsidiary companies including Nelson Laboratories, Inc. (“Nelson Labs”), a South Dakota corporation. The Agreement also restructured Nelson Labs into two separate entities: Nelson Limited (a South Dakota limited partnership) and Nelson Management Corp. (a South Dakota corporation). Nelson Management owns a 1% interest in Nelson Limited, with MSC as the sole limited partner, owning the remaining 99% interest. Olson is the Director of Nelson Management, which is the managing partner of Nelson Limited. The terms of the Agreement includes a provision that it is to be “construed in accordance with and governed by the laws of the State of Florida.” The Agreement also provides: “All Directors shall have access to and share among themselves information related to MSC, Nelson, Nelson Limited, the Stadium Companies and the Partnership.”
In the spring of 2011, Nelson Limited entered into a contract with MWI Veterinary Supply to sell substantially all of its assets. As a result of the sale, the Rob-bies made multiple demands for information and documents. Olson claims these materials have either been produced or, alternatively, never existed in the first place. The Robbies then filed this suit, alleging that Olson breached the Agreement by refusing to produce information and financial documents related to the MWI sale, including Nelson’s books and records, which the Robbies (who are also MSC Directors) are entitled to receive. The Robbies also sought an order requiring Olson to produce all books and records concerning Nelson and its operations.
The trial court conducted an evidentiary hearing, pursuant to Venetian Salami Co. v. Parthenais, 554 So.2d 499, 502 (Fla.1989), in order to resolve the jurisdictional issues. In an affidavit filed in support of her motion to dismiss, Olson alleged she has been a resident of Minnesota since 1979 and has not resided in Florida since 1974, she personally does not conduct regular business activities nor maintain any business purpose in Florida, she does not own any property in Florida, and she has been to Florida only a handful of times in the past ten years — most recently “roughly a year ago” — usually to visit friends. She also asserted that Nelson Limited owns no property and maintains no offices, operations, or employees in Florida, and its principal place of business and the location of its books and records is Sioux Falls, South Dakota. Further, she alleged that *639 the Robbies played no role in the MWI sale, which did not take place in Florida. In her deposition, she conceded that she had previously attended MSC board meetings in Florida.
The Robbies allege that Florida is an appropriate forum due to Olson’s status as both a shareholder and a director of a Florida corporation (MSC) with significant assets in Florida. They also cite to Olson’s prior history of availing herself to Florida courts to pursue litigation relating to MSC-related disputes. Affidavits filed by Timothy Robbie and another sibling, Janet Robbie, also asserted that Olson had been a board member of MSC for twenty years, attended MSC shareholder and board meetings in Florida, and acted as MSC’s President and/or CEO in filing annual reports in Florida for fourteen years. They averred that Olson maintained significant ties to Florida as the co-trustee of a Florida trust established by their mother until the trust’s termination in 2011, including court appearances relating to the administration of their mother’s estate. Further, they claimed Olson executed the Agreement with the aid of Florida counsel, understanding that she was obligated to share information about Nelson in Florida, and that she historically provided this information in Florida.
The trial court denied Olson’s motion to dismiss based on discrepancies between the testimony of the parties, yet did not indicate which section of Florida’s long-arm statute, § 48.193, Fla. Stat. (2012), or what specific facts, supported the finding that Olson was subject to personal jurisdiction in Florida courts.
[T]he Florida Supreme Court [has] approved of a two-step analytical process for determining personal jurisdiction. The first step requires the trial court to determine whether sufficient facts have been alleged to bring the action within the ambit of Florida’s long-arm statute. If the long-arm statute applies, the second step requires the trial court to decide whether “minimum contacts” exist between the defendant and the forum state to satisfy due process. The due process analysis is “a more restrictive requirement” than the “broad grant of jurisdiction” under the long-arm statute and is governed by precedent from the Supreme Court of the United States interpreting the Due Process Clause ....
Marina Dodge, Inc. v. Quinn, 134 So.3d 1103, 1105-06 (Fla. 4th DCA 2014) (citations and footnote omitted).
Personal jurisdiction can exist in two forms: “specific,” in which the alleged activities or actions of the defendant are directly connected to the forum state, and “general,” in which the defendant’s connection with the forum state is so substantial that no specific or enumerated relationship between the alleged wrongful actions and the state is necessary.
Caiazzo v. Am. Royal Arts Corp., 73 So.3d 245, 250 (Fla. 4th DCA 2011).
The standard of review for the issue of personal jurisdiction over a nonresident is de novo. Anthony v. Gary J. Rotella & Assocs., P.A., 906 So.2d 1205, 1207 (Fla. 4th DCA 2005). Therefore, we must first consider whether, under section 48.193(1)(g), there is specific personal jurisdiction over Olson because she allegedly breached an agreement that required her to perform duties in Florida. Under the long-arm statute, individuals submit themselves to the jurisdiction of Florida for any cause of action arising from a breach of contract for failure to “perform acts required by the contract to be performed in this state.” § 48.193(1)(g), Fla. Stat. (2012). It is the terms of the contract, not the familial relationship between these parties, that is the relevant consideration for de *640 termining whether Florida has jurisdiction over Olson under section 48.193(l)(g). This provision “must be strictly construed in order to guarantee compliance with due process requirements.” Cosmopolitan Health Spa, Inc. v. Health Indus., Inc., 362 So.2d 367, 368 (Fla. 4th DCA 1978); see also Classic Lines, Inc. v. Nat’l Coach Corp., 734 F.Supp. 471, 473 (S.D.Fla.1990) (“Florida Courts require substantial proof before they are willing to authorize in personam jurisdiction over a non-resident defendant under 48.193(1)(g).”).
The caselaw interpreting Section 48.193(l)(g), Fla. Stat., although scant, is sufficient to support the view that before in personam jurisdiction may attach over a defendant, proper allegations must be pled to show that the defendant failed to perform an act or acts whose performance was to be in Florida and that such breach formed the basis for the cause of action for which relief is sought by the plaintiff.
Cosmopolitan, 362 So.2d at 368 (emphasis added). In other words, “there must exist a duty to perform an act in Florida; a contractual duty to tender performance to a Florida resident is not in itself sufficient to satisfy the statute.” Posner v. Essex Ins. Co., 178 F.3d 1209, 1218 (11th Cir.1999) (emphasis supplied). It is not enough that a foreign defendant merely contract with a Florida resident, or that performance under the contract could have been made in Florida; rather, the contract itself must require performance in Florida in order to invoke Florida jurisdiction under section 48.193(l)(g). Travel Opportunities of Fort Lauderdale, Inc. v. Walter Karl List Mgmt., Inc., 726 So.2d 313, 314 (Fla. 4th DCA 1998).
Here, the Agreement clearly and unambiguously provided that “All Directors shall have access to and share among themselves information related to MSC, Nelson, Nelson Limited, the Stadium Companies and the Partnership.” This language of the contract, relied on by the Robbies to invoke jurisdiction, does not explicitly require Olson to perform any act in Florida whatsoever. In fact, any such sharing of information could be performed by Olson from any location at all, including either South Dakota, Minnesota, or Florida.
The Robbies’ complaint also demands information regarding Nelson Limited’s purchase by MWI — a sale of a company that had no offices, employees, assets, property, or records in Florida, and that did not occur in Florida. Because the terms of the Agreement do not clearly require performance in Florida, Olson’s alleged breach was not of an act that was “required by the contract to be performed in this state.” § 48.193(1)(g), Fla. Stat. (2012) (emphasis added). Therefore, long-arm jurisdiction cannot be properly invoked over her under this provision of the statute, regardless of whether or not she previously provided information about Nelson Labs to shareholders in Florida. See Hamilton v. Alexander Proudfoot Co. World Headquarters, 576 So.2d 1339, 1340 (Fla. 4th DCA 1991) (no basis for long-arm jurisdiction in suit for failure to return confidential documents where contract contained no mandate “that any material be returned to [the employer] in Florida.”); Classic Lines, 734 F.Supp. at 473-74 (no basis to invoke long-arm jurisdiction where no showing made that the contract for the purchase of buses imposed a duty on defendant “to deliver, or actually operate the buses in Florida”).
Because we find that there was no specific personal jurisdiction, we must next consider whether there is general personal jurisdiction over Olson under the long-arm statute. Section 48.193(2) provides that: “A defendant who is engaged *641 in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.” § 48.193(2), Fla. Stat. (2012). “This court and other district courts have held ‘substantial and not isolated’ to mean ‘continuous and systematic general business contact’ with Florida.” Caiazzo, 73 So.3d at 250.
Florida courts have found continuous and systematic general business contacts ... where a nonresident defendant’s activities are extensive and pervasive, in that a significant portion of the defendant’s business operations or revenue derived from established commercial relationships in the state. Such contacts have also been found where the defendant continuously solicits and procures substantial sales in Florida. General jurisdiction requires far more wide-ranging contacts with the forum state than specific jurisdiction, and it is thus more difficult to establish. One reason for requiring a more rigorous showing to establish general jurisdiction is because jurisdiction under section 48.193(2) does not require that a lawsuit’s cause of action arise from activity within Florida, or that there be any connection between the claim and the defendant’s Florida activities.
Biloki v. Majestic Greeting Card Co., 33 So.3d 815, 820 (Fla. 4th DCA 2010) (citations and internal quotation marks omitted).
Here, the undisputed evidence does not support a finding of general jurisdiction under section 48.193(2). Olson has not been a Florida resident since 1974, owns no property here, and travels here only irregularly to visit friends. The factual discrepancies relied on by the trial court to deny the motion to dismiss pertain to matters that, under Florida law, are insufficient to establish long-arm jurisdiction. For example, Olson’s status as an MSC director, her filing of annual reports, or her service as trustee in a now-defunct Florida trust, are all insufficient to establish general personal jurisdiction in Florida. See Carter v. Estate of Rambo, 925 So.2d 353, 356 (Fla. 5th DCA 2006) (recognizing that “any activity in one’s capacity as a corporate officer or director is exempted from consideration in support of the exercise of long-arm jurisdiction over said officer or director,” and finding no basis for personal jurisdiction over the appellant solely because “he signed business reports as a managing member of an LLC in his representative capacity”); Doe v. Thompson, 620 So.2d 1004, 1006 (Fla.1993) (“While [a] Corporation, which operates businesses in Florida, could be haled into court because of its minimum contacts, its chief executive officer is not by virtue of his position subject to personal jurisdiction.”); Ace Investors, LLC v. Rubin, 494 Fed.Appx. 856, 859 (10th Cir.2012) (holding that the trial court could not rely on its specific jurisdiction over the appellee in her capacity as trustee to exercise jurisdiction over her in an unrelated proceeding). Therefore, even though Olson attended occasional MSC board meetings in Florida, this is insufficient, without more, to establish general jurisdiction over her.
Likewise, the mere fact that Olson previously availed herself of the Florida courts is insufficient where there was no information provided to the trial court regarding Olson’s choice of Florida as a forum, including whether Florida was a mandatory or permissive forum for any of those disputes, or whether she voluntarily and purposefully availed herself of Florida’s privileges and protections. See Smith Architectural Grp., Inc. v. Dehaan, 867 So.2d 434, 436 (Fla. 4th DCA 2004). On a related issue, the Robbies have not provid *642 ed any legal authority to support their claim that Olson’s employment of Florida counsel to assist her in the execution of the contract was sufficient to invoke general jurisdiction over Olson.
In short, no evidence was presented to the trial court that Olson ever played a substantial part in the management of MSC in Florida, or that she purposely established minimum contacts within Florida. Because there was insufficient evidence showing that Olson engaged in any “continuous and systematic general business contact” with Florida, she cannot be subject to general personal jurisdiction in Florida. Caiazzo, 73 So.3d at 250. Therefore, we reverse the trial court’s order denying Olson’s motion to dismiss for lack of jurisdiction.

Reversed.

MAY and CIKLIN, JJ., concur.