DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ASTRO ALUMINUM TREATING CO., INC.,**
Appellant,

v.

**INTER CONTAL, INC.,**
Appellee.

No. 4D19-2921

[May 27, 2020]

Appeal of a nonfinal order from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Janis Brustares Keyser, Judge; L.T. Case No. 502019CA001633XXXXMBAB.

Todd M. Kurland of the Law Office of Todd M. Kurland, P.A., North Palm Beach, for appellant.

Robin I. Frank and Andrew B. Blasi of Shapiro, Blasi, Wasserman & Hermann, P.A., Boca Raton, for appellee.

WARNER, J.

In this appeal, appellant contends that the trial court erred by finding personal jurisdiction over it under the long-arm statute. The court found jurisdiction, because the complaint asserts that appellant breached a contract by failing to perform acts required by the contract to be performed in this state. § 48.193(1)(a)(7), Fla. Stat. (2019). We reverse because the contract in question did not require acts to be performed in Florida.

To acquire personal jurisdiction over a non-resident defendant within the scope of Florida's long-arm statute requires a two-step process. *Venetian Salami Co. v. Parthenais,* 554 So. 2d 499 (Fla. 1989). First, the plaintiff must allege sufficient jurisdictional facts to bring the action within the ambit of Florida's long-arm statute. *Id.* at 502. Second, if the long-arm statute applies, the next inquiry is whether sufficient "minimum contacts" are demonstrated to satisfy due process requirements. *Id.*

If the complaint contains sufficient allegations to establish long-arm jurisdiction, and the defendant wishes to challenge that jurisdiction, then

the defendant must file an affidavit rebutting the allegations that support jurisdiction. *Venetian Salami*, 554 So. 2d at 502. Then the burden shifts back to the plaintiff to file an affidavit in support of personal jurisdiction. *Id.* If the facts contained within the affidavits can be harmonized, the trial court can render a decision based on the affidavits. *Id.* at 503. If the facts within the affidavits conflict, then the trial court must conduct an evidentiary hearing to resolve the issue. *Id.*

Regardless, the plaintiff must also satisfy the second prong of the analysis; showing the defendant has sufficient minimum contacts with Florida to satisfy due process. *Id.* at 502; *see also Cornerstone Inv. Funding, LLC v. Painted Post Grp., Inc.*, 188 So. 3d 904, 906 (Fla. 4th DCA 2016) ("The mere fact, however, that Cornerstone allegedly breached a contract by failing to make payments on the contract in Florida would not constitute sufficient minimum contacts with this state to satisfy due process.").

This complaint alleged two statutory bases for long-arm jurisdiction under section 48.193. First, without expressly citing subsection (1)(a)(7), it alleged that appellant breached a contract in this state when it shipped materials into the state. Second, citing subsection (1)(a)(6), it alleged that appellant caused injury to persons or property within the state arising out of Astro's act or omission outside of the state.

We view this complaint as solely alleging specific jurisdiction based on one transaction between the parties. The complaint alleged that Appellee, Inter Contal, supplies specialty metals to customers in the aerospace industry and then described the parties' business relationship and the relevant transaction. Appellant, Astro Aluminum Treating Co., Inc., is a California corporation in the business of providing various specialty metal processing and treatment services. Inter Contal delivered specially fabricated metals to Astro for heat treatment to certain well-defined specifications pursuant to an invoice attached to the complaint. Astro accepted the order which included a "Ship To" specification of Inter Contal's address in Florida. After Astro completed the treatment and certified the process, it arranged for the material to be shipped back to Inter Contal in Florida. Inter Contal then delivered the materials to a customer in Italy who discovered that the treatment of the metals did not conform to specifications, which made the metals worthless.

Based on the above allegations, Inter Contal alleged that Astro "may reasonably be expected to respond in court in Florida over any claims which may arise from the aforesaid transaction, course of dealing and conduct, including entering into a contract with [Inter Contal] which

contemplated and required [Astro] to ship [Inter Contal's] materials back to [Inter Contal] in Florida after [Astro] treated them."

Inter Contal sued for both breach of contract and violations of the Florida Deceptive and Unfair Trade Practices Act. Attached to the complaint was an order from Inter Contal, which recites that Astro Aluminum as "vendor" with a "ship to" Inter Contal. Directions on the front of the invoice state "re-pack material into wood boxes provided." Also attached is an invoice from Astro to Inter Contal showing the amount due and requesting remittance to its address in California. In addition, a FedEx bill of lading was also made an exhibit, showing that shipping charges were prepaid by Inter Contal for shipping from Astro to Inter Contal.

Astro moved to dismiss the complaint alleging that Florida lacked either general or specific jurisdiction. Astro asserted that it did not engage in systematic and continuous business contacts in Florida. It attached affidavits from its vice president of operations as well as its quality assurance manager. The vice president attested that Astro was located in California, all its operations were conducted there, it is not registered to do business in Florida, has no offices here, and derives only a limited portion (1%) of its revenue from Florida-based customers.

Both affidavits described Astro's business processes as follows. Astro receives metal alloys from its customers for the sole and exclusive purpose of tempering or treating the alloys at its place of business in California. All customers, including the plaintiff, prepay shipping for their alloys to and from Astro's place of business in California. The customer's raw alloys are delivered to Astro at its plant in California where they are treated and tested to the customer's specifications. Once the treatment and testing are completed, the finished alloys are shipped from Astro's California facility to the location specified by the customer through the customer's prepaid return shipping. The affidavits concluded that not a single action undertaken by Astro or any third party utilized in the course of Astro's operations occurred outside of the State of California.

Astro argued that shipping Inter Contal's own materials by prepaid shipment after treatment by Astro in California to it by prepaid shipping was insufficient to provide jurisdiction. Furthermore, the telephone calls and emails prior to the purchase order between the parties did not constitute the breach of any contract to be performed in Florida.

Based upon the affidavits, the trial court denied the motion to dismiss for lack of jurisdiction. The court relied on *Control Laser Corp. v. Rocky*

*Mountain Instrument Co.*, 130 F. Supp. 2d 1344, 1346 (M.D. Fla. 2000), which involved the sale of allegedly defective mirrors manufactured by a Colorado business and delivered to a purchaser in Florida. *Control Laser* determined that the defendant failed to perform acts required by the contract to be performed in Florida, when it failed to deliver non-defective items in Florida. The court here concluded that Astro negotiated with Inter Contal over phone calls and emails sent to and from Florida, treated the alloys and then delivered the "goods" to Inter Contal in Florida and accepted payment sent from Florida by Inter Contal. It also found that Astro had sufficient minimum contact with the State of Florida to justify the assertion of jurisdiction. From this order, Astro appeals.

A trial court's ruling on a motion to dismiss for lack of personal jurisdiction is reviewed de novo. *NHB Advisors, Inc. v. Czyzyk*, 95 So. 3d 444, 447 (Fla. 4th DCA 2012). Florida Statute section 48.193(1)[(a)(7)][1] "must be strictly construed in order to guarantee compliance with due process requirements." *Olson v. Robbie*, 141 So. 3d 636, 640 (Fla. 4th DCA 2014), quoting *Cosmopolitan Health Spa, Inc. v. Health Indus., Inc.*, 362 So. 2d 367, 368 (Fla. 4th DCA 1978).

We agree with Astro that its contract with Inter Contal did not require it to perform any acts in Florida. In doing so, we disagree with the trial court that the contract required delivery of the treated metal alloys in Florida. Based upon the facts in the affidavits, as well as the documents attached to the complaint, we hold that the contract did not require performance in Florida. Therefore, no long-arm jurisdiction attached.

In this case, the purchase order and invoices constituted the contract between the parties. The contract required Inter Contal to send its aluminum alloy to Astro for treatment. Thus, Inter Contal owned the alloy, not Astro. It was sent in crates which were to be used to return the treated product. When treatment was finished, the contract provided that the alloy would "ship to" Inter Contal in the crates it furnished and by shipping prepaid by it. Astro's obligations were complete when it delivered the product to the carrier in California for shipping. In other words, delivery occurred in California, not Florida.

Although the treatment of alloy is not a sale of goods pursuant to the Uniform Commercial Code, the provisions of the code are useful in construing the contractual provision in this case and determining where delivery occurs. Under the UCC this also affects the risk of loss of goods

---

[1] Section 48.193 was amended in 2013 and changed the numbering of the statute. Section 48.193(1)(g) became section 48.193(1)(a)(7).

4

during transit. In *Pestana v. Karinol Corp.*, 367 So. 2d 1096, 1099 (Fla. 3d DCA 1979), the court distinguished shipment and destination contracts, the two types of sales contracts that apply when a carrier is used to transport goods sold:

> A shipment contract is considered the normal contract in which the seller is required to send the subject goods by carrier to the buyer but is not required to guarantee delivery thereof at a particular destination.
>
> Under a shipment contract, the seller, unless otherwise agreed, must: (1) put the goods sold in the possession of a carrier and make a contract for their transportation as may be reasonable having regard for the nature of the goods and other attendant circumstances, (2) obtain and promptly deliver or tender in due form any document necessary to enable the buyer to obtain possession of the goods or otherwise required by the agreement or by usage of the trade, and (3) promptly notify the buyer of the shipment. On a shipment contract, the risk of loss passes to the buyer when the goods sold are duly delivered to the carrier for shipment to the buyer.
>
> A destination contract, on the other hand, is considered the variant contract in which the seller specifically agrees to deliver the goods sold to the buyer at a particular destination and to bear the risk of loss of the goods until tender of delivery. This can be accomplished by express provision in the sales contract to that effect or by the use of delivery terms such as F.O.B. (place of destination). Under a destination contract, the seller is required to tender delivery of the goods sold to the buyer at the place of destination. The risk of loss under such a contract passes to the buyer when the goods sold are duly tendered to the buyer at the place of destination while in the possession of the carrier so as to enable the buyer to take delivery. The parties must explicitly agree to a destination contract; otherwise the contract will be considered a shipment contract.

[Citations omitted.] In *Pestana*, the court held that a purchase invoice which directed shipment of goods to be sent to an address in Mexico, without any allocation of risk of loss, was a shipment contract. It explained:

5

A "send to" or "ship to" term is a part of every contract involving the sale of goods where carriage is contemplated and has no significance in determining whether the contract is a shipment or destination contract for risk of loss purposes. *Electric Regulator Corp. v. Sterling Extruder Corp.*, 280 F. Supp. 550, 557-58 (D.C. Conn. 1968); *Eberhard Manufacturing Co. v. Brown*, 61 Mich. App. 268, 232 N.W.2d 378 (1975). As such, the "send to" term contained in this contract cannot, without more, convert this into a destination contract.

*Id.* at 1100.

Thus, under general commercial dealings, the place of performance of the sale of goods is not necessarily the ultimate destination. We conclude that the same analysis of contractual terms should apply to a strict construction of the long-arm statute. The mere fact that the contract provides for shipment to Florida is not determinative of jurisdiction, because the contract term does not mean that the contracting party is obligated to "deliver" the product in Florida. Particularly in this case, the sole designation in the purchase order was to "ship to" Inter Contal. Inter Contal provided the packing and paid for the shipping. If this were a contract for the sale of goods, Inter Contal would have had the risk of loss once the product was delivered to the carrier for shipping. Astro had completed its contractual obligations when it delivered the goods to the carrier in California. Furthermore, to the extent that the product was defective, it was delivered in a defective state in California.

In *Control Laser*, relied on by the trial court, the facts simply state that the parties negotiated a contract whereby the defendant would sell "and deliver" mirrors to Florida. Since no other facts are included in the opinion with respect to this crucial element of jurisdiction under section 48.193(1)(a)(7), we cannot say whether we agree or disagree with the determination of the court. It does not appear that the facts of that case are comparable to those of the current case, where Inter Contal sent its alloys to California for treatment by Astro and then paid to have them shipped back to it in Florida. However, if the facts are similar regarding the contract and purchase order, we disagree with *Control Laser* that under our statute, strictly construed, personal jurisdiction can be asserted based upon section 48.193(1)(a)(7).

Inter Contal also relies on *Lacy v. Force V Corp.*, 403 So. 2d 1050 (Fla. 1st DCA 1981), which is inapposite since under the facts of that case the contract required delivery in Florida. The governing purchase contract required that equipment be delivered to the buyer's place of business in

Florida and that payment would not be made until the equipment arrived, was inspected, and approved by the purchaser.

As an alternative basis for specific jurisdiction, Inter Contal looks to section 48.193(1)(a)(6), also alleged in the complaint but not the basis of the trial court's ruling. That section provides for exercise of long-arm jurisdiction over one who is not a citizen or resident of the state when he or she causes injury to persons or property within the state under certain circumstances involving products, materials or things serviced when used or consumed in the state resulting in injury. The complaint's allegations show that the tempered alloys were not consumed or used within the state, nor was there any resulting injury in the state. Instead, the panels were sent to Italy or Japan for use in a third party's production, where their defective nature was revealed. The only injury to Inter Contal alleged in its Florida Deceptive Unfair Trade Practices Act claim is monetary, which is insufficient for jurisdiction under this provision of the long-arm statute. *See Aetna Life & Cas. Co. v. Therm-O-Disc, Inc.*, 511 So. 2d 992 (Fla. 1987) (holding that financial damage alone is insufficient to assert long-arm jurisdiction under its terms.).

Finally, and alternatively, Inter Contal argues that jurisdiction could be upheld based upon section 48.193(2), dealing with general jurisdiction, which allows this state to assert jurisdiction over a defendant engaging in substantial activity within the state whether or not the present claim arises from that activity. However, Inter Contal did not allege facts in its complaint to assert such jurisdiction. Rather, the complaint's allegations focused on the specific transaction and purchase order outlined above.

In sum, the complaint sought to establish specific personal jurisdiction pursuant to section 48.193(1)(a)(7) and 48.193(1)(a)(6). As to (a)(6), the allegations were insufficient to establish jurisdiction. As to (a)(7), the affidavits and documents establish that the contract between the parties did not require any performance in Florida. Therefore, the trial court erred in denying Astro's motion to dismiss for lack of personal jurisdiction. We reverse and remand for entry of an order dismissing the complaint for lack of personal jurisdiction.

GERBER and CONNER, JJ., concur.

\*        \*        \*

***Not final until disposition of timely filed motion for rehearing.***

7