842 So.2d 1013 (2003)
John C. CARLYLE, Appellant,
v.
PALM BEACH POLO HOLDINGS, INC., Glenn F. Straub and Christopher Denison, Appellees.
No. 4D02-3696.
District Court of Appeal of Florida, Fourth District.
April 16, 2003.
*1014 Juan C. Enjamio, Allie Hernandez Pennie and Patricia Acosta of Hunton & Williams, Miami, for appellant.
Craig T. Galle, West Palm Beach, for appellees Palm Beach Polo Holdings, Inc., and Glenn F. Straub.
OWEN, WILLIAM C., JR., Senior Judge.
Appellant, a nonresident defendant, moved to dismiss for lack of personal jurisdiction. The trial court, relying on the authority of Wendt v. Horowitz, 822 So.2d 1252 (Fla.2002), denied the motion. Because plaintiffs have failed to show a connexity between their causes of action and defendant's communications into Florida, as required by Wendt, we reverse.
This case, the third in a series of somewhat related cases, sought damages for the defendants' alleged misconduct in connection with one of the two earlier lawsuits. A brief description of those two earlier cases will be helpful.
The first lawsuit was filed in May, 1999 in Palm Beach County (the "Palm Beach County" case) by Palm Beach Polo Holdings, Inc., ("Polo Holdings") against Franklin A. Denison ("Frank") and two of his companies (referred to collectively as "Broward Marine"). The complaint alleged defendants had breached the terms of a certain Asset Purchase Agreement between plaintiff and defendants which, among other things, involved a "like-kind" exchange of real property. Plaintiff sought damages and injunctive relief. Frank retained the law firm of Holland & Knight and one of its partners, James Wing, Esq., to represent him and Broward Marine.
The second lawsuit was filed in September, 1999 in Broward County (the "Broward County case") by Broward Marine and Frank (through the voluntary guardian of his property)[1] against Polo Holdings, Glenn F. Straub, its president, and a broker, Christopher Denison ("Kit"), described as Frank's step-son. Plaintiffs were represented by James D. Wing, Esq., and Heather Keith, Esq., of the law firm of Holland & Knight, LLP. The complaint alleged that Frank, while on medication in a Michigan hospital recovering from a stroke, had executed the Asset Purchase Agreement and closed the transaction (on behalf of himself and Broward Marine) in reliance upon certain misrepresentations made by the several defendants which they knew to be false and fraudulent. Plaintiffs sought rescission of the Asset Purchase Agreement together with damages, and filed a notice of lis pendens on the real property which had been exchanged.
The present case, the third of the trilogy, was filed in October, 1999 by Polo Holdings, Straub and Kit. Named as defendants were the firm of Holland & Knight, Mr. Wing, Ms. Keith, and three other individuals, one of whom is appellant. The complaint alleged the following: that even though Holland & Knight, Mr. Wing *1015 and Ms. Keith were formally retained by Frank, they were retained at the direction of appellant; that the defendants "cooked up"[2] a scheme to put pressure on Polo Holdings, Straub and Kit by filing an unsupported lawsuit against them; that Holland & Knight and its lawyers, at the direction of appellant, filed the Broward County case along with the notice of lis pendens knowing the suit was baseless, all done for the improper purpose of causing the plaintiffs to incur fees and costs and to force a settlement of the Palm Beach County case. The complaint, which sought damages against all defendants, was in three counts: (1) abuse of process (filing the Broward County case); (2) slander of title (the alleged wrongful filing of notice of lis pendens); and (3) tortious interference with contract (causing Frank and Broward Marine to breach the Asset Purchase Agreement).
The complaint also alleged that appellant Carlyle, a resident of Michigan, was subject to personal jurisdiction under Florida's long-arm statute, section 48.193 Fla. Stat., because he "operates, conducts, and carries on business ventures in the State of Florida and has agents and representatives in this State. Further, Carlyle is engaged in substantial and not isolated activities within the State of Florida, and has committed torts which have caused injury in this State."
Appellant's timely motion to dismiss for lack of personal jurisdiction argued he did not engage in any of the acts which would bring him within Florida's long-arm statute, nor did he have the minimum contacts to satisfy constitutional due process requirements. The motion was supported by his affidavit in which he stated the following: he was an attorney with a firm located in Grand Haven, Michigan; his practice was limited to corporate transactional work and estate planning; he was licensed to practice only in Michigan; he had never been licensed to practice in Florida nor admitted pro hac vice in Florida state or federal courts; he had never owned any property in Florida; he had never been a resident of Florida; he had traveled to Florida for pleasure on four specific occasions; that he traveled to Florida for business on only one occasion, to meet at a former client's home some time ago; that he had never traveled to Florida to render legal advice there; that his firm did not maintain an office or do business in Florida; that he served as legal counsel to Frank while Frank was in Michigan, but never spoke to Frank while he was in Florida and that he counseled him only on issues relating to Michigan law; that Frank's secretary contacted him in Michigan to help coordinate Frank's legal services in connection with the Palm Beach County case; that Frank retained Mr. Wing at Holland & Knight; that appellant's only involvement was to analyze, in Michigan, a corporate transaction that was the subject of the Florida litigation, but he did not issue a written opinion in Florida; and that he exchanged a few telephone calls with Frank's Florida counsel regarding Frank's Michigan estate plan.
The plaintiffs deposed appellant on the jurisdictional issue. By and large, appellant's deposition testimony did not dispute his affidavit in any material degree: he *1016 recalled two occasions, not one, when he had met with clients in Florida; the first had been a long time ago when he went to investigate a business that a client, not related to this litigation, was contemplating purchasing; the second occasion occurred five to ten years previously, when he attended a board of directors meeting of a non-Florida company; he met Frank for the first time in Michigan in the summer of 1999 and did an analysis, after the fact, of the Florida business transaction (in which the Broward Companies and Frank sold assets to Polo Holdings) for the purpose of determining what was sold and what consideration was received; prior to that meeting he had not represented Frank; he met with Frank six or seven more times, always in Michigan; he drafted a durable power of attorney for Frank, giving power of attorney to Thomas Burns, M.D. (another named defendant in this case); he provided a list of Florida law firms to Frank for representation in Frank's Florida litigation and was aware that Frank had selected Holland & Knight and Wing to represent him in that litigation; he had never personally met with the Florida lawyers although he had talked to Wing and Frank on the telephone together three or four times; his only involvement with Holland & Knight's representation of Frank, and the only extent to which he assisted Holland & Knight in the Florida litigation, was to analyze the transaction and communicate from Wing or other members of his firm to Frank, and from Frank back to Wing.
At the hearing on appellant's motion to dismiss, the only evidence was appellant's affidavit and his deposition. The trial court, without making specific findings other than to find there were sufficient minimum contacts with the State of Florida, stated in its order it was relying on the affidavit, the deposition and Wendt, 822 So.2d at 1252.
In conducting a de novo review of the trial court's ruling on a motion to dismiss for lack of personal jurisdiction, the reviewing court derives the facts from the affidavits in support of the motion to dismiss, and the transcripts and records submitted in opposition to the motion to dismiss, Wendt at 1254, which in this case consist only of appellant's affidavit and deposition and the legally sufficient jurisdictional allegations in the complaint that are not rebutted. Our review of those facts reveals insufficient support for plaintiffs' allegations that appellant was operating, conducting, engaging in or carrying on a business in this state, or that he was engaged in substantial and not isolated activity within the state. Thus, the statutory basis for long-arm personal jurisdiction over appellant, if any, necessarily would have to be under section 48.193(1)(b), i.e., "committing a tortious act within this state." By the trial court's announced reliance on Wendt, it apparently came to the same conclusion.
Although appellant clearly was not physically present in Florida when the alleged torts were committed, Wendt held that "committing a tortious act" in Florida under section 48.193(1)(b) can occur through a nonresident defendant's telephonic, electronic or written communications into Florida, the physical presence of the defendant in Florida not being required. 822 So.2d at 1260. Appellees cited Wendt to the trial court as being dispositive of the jurisdictional issue, apparently on the basis of proof of appellant having made telephonic and written communications to Frank's Florida lawyers. That argument overlooks, however, the further holding of the Wendt court that "... the cause of action must arise from the communications *1017 ... because of the connexity requirement contained in section 48.193(1)."
In the Wendt case, as well as in each of the cases of Carida v. Holy Cross Hospital, Inc., 424 So.2d 849 (Fla. 4th DCA 1982), Silver v. Levinson, 648 So.2d 240 (Fla. 4th DCA 1994), Achievers Unlimited, Inc. v. Nutri Herb, Inc., 710 So.2d 716 (Fla. 4th DCA 1998), and Acquadro v. Bergeron, 778 So.2d 1034 (Fla. 4th DCA), rev. granted, 797 So.2d 584 (Fla.2001), a nonresident defendant was alleged to have made telephonic or written communications into Florida which were in and of themselves tortious; viz:, the communications were either defamatory statements or negligent legal advice to a client. In each, the cause of action which was alleged arose out of the communication, that is, the communication itself was alleged to be tortious. The instant case is readily distinguishable. Appellees have neither alleged nor shown evidence to establish that the communications were themselves tortious, nor that the several alleged causes of actionabuse of process, slander of title, and tortious interferencearose out of such communications. Rather, those alleged causes of action are asserted by plaintiffs to have arisen, not out of any communication from appellant into this state, but out of the filing of the lawsuit, the filing of the lis pendens, and intentionally causing Frank to breach the Asset Purchase Agreement, respectively. None of the alleged causes of action would depend upon proof of either the existence or the content of any of the communications from appellant into Florida. Appellees having failed to demonstrate that the causes of action alleged arose from the appellant's communications into Florida, the order denying appellant's motion to dismiss is reversed.
Appellant has also raised issues as to whether any of the alleged torts are actionable and whether the appellees have met their burden to show appellant had sufficient minimal contacts with Florida to satisfy constitutional due process requirements. Our disposition of this appeal on the connexity issue makes it unnecessary for us to decide these other issues.
REVERSED.
STEVENSON and SHAHOOD, JJ., concur.
NOTES
[1] Henry Latimer, Esq., had been appointed voluntary guardian of Frank's property subsequent to the filing of the first case.
[2] "Cooked up" can mean "concocted" and we have assumed that plaintiffs intend by its use to allege a conspiracy. Appellant's affidavit and deposition testimony, discussed in the body of the opinion, disavow his involvement in the Florida litigation and with Holland & Knight's representation of Frank other than having analyzed the Asset Purchase Agreement and acting as a conduit between the lawyers and Frank. Plaintiffs have not offered factual proof to show that appellant was involved in such a conspiracy.