[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 04-12890

_____

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
August 23, 2005
THOMAS  K. KAHN
CLERK

D. C. Docket No. 03-02356-CV-T-30-MSS

HORIZON AGGRESSIVE GROWTH, L.P.,
a Delaware limited partnership,

Plaintiff-Appellant,

versus

ROTHSTEIN-KASS, P.A.,
a New Jersey professional corporation,
ROTHSTEIN KASS & COMPANY, P.C.,
a California professional corporation,
ROTHSTEIN, KASS & COMPANY, CERTIFIED PUBLIC
ACCOUNTANTS, P.C.,
a New York professional corporation,
JOHN DOES, 1-40,
MARC J. WOLF,

Defendants-Appellees.

GILBERT H. DAVIS,
SIMS MOSS KLINE & DAVIS, LLP,
a Georgia limited liability partnership,

Defendants.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

**(August 23, 2005)**

Before EDMONDSON, Chief Judge, BIRCH and COX, Circuit Judges.

BIRCH, Circuit Judge:

This appeal requires us to address whether Florida's Long-Arm statute, FLA.

STAT. ch. 48.193, permits the assertion of in personam jurisdiction over an out-of-

state auditing company that, in the negotiation of contracts and in the rendition of

services from its out-of-state office, telephonically contacted a Florida-based

partnership and electronically accessed its computer files. The district court found

that Defendants-appellees Rothstein Kass & Co., P.C. and related entities[1] neither

were "doing business in Florida" nor committed a tortious act in Florida as defined

by the Long-Arm statute, and therefore dismissed the action against Kass for lack

of jurisdiction. Because the allegations in the complaint that Kass made

misrepresentations in its telephonic communications with Plaintiff-appellant

---

[1] The Defendants-appellees in this appeal include: Rothstein Kass & Co., P.C. ("Kass California"), a California corporation, Rothstein-Kass, P.A. ("Kass New Jersey"), a New Jersey corporation, Rothstein, Kass & Co. Certified Public Accountants, P.C. ("Kass New York"), a New York corporation, and Marc Wolf, a California resident. Unless otherwise noted, they will be collectively referred to as "Kass" in this opinion.

2

Horizon Aggressive Growth, L.P. ("Horizon") were sufficient to support jurisdiction under Florida's Long-Arm statute, we **REVERSE** the district court's order and **REMAND** for further proceedings.

## I.  BACKGROUND[2]

Horizon was established in 1998 as a private investment fund partnership that invested in publicly traded securities.  The initial partnership offering documents provided that the fund would be managed by a general partner, Horizon Capital Management, Inc., which in turn would delegate fund management responsibilities to a portfolio manager.  The 1998 partnership offering memorandum stated that Norman L. Yu & Company, Inc. ("Yu & Company") would be retained as the portfolio manager of the fund.  The memorandum explained that Yu & Company was managed by Norman Yu, who had developed his proprietary Six Key Stock Selection System and would implement this system in managing the fund.  In addition, the partnership offering memorandum provided that the fund would be audited annually by independent certified public accountants.

---

[2] Because this appeal comes to us in the procedural posture of the district court's grant of a motion to dismiss for lack of jurisdiction, our recitation of the facts is derived from the allegations in the complaint, which we accept as true to the extent they are uncontroverted by Kass's affidavits.  See Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 255 (11th Cir. 1996). Where the complaint and Kass's affidavits conflict, we construed all reasonable inferences in favor of Horizon.  See id.

In 2000, pursuant to a March 1999 engagement letter signed between Horizon and Wolf while Wolf was working for an accounting firm that was later acquired by Kass California, Kass was called upon to audit Horizon's 1999 year-end financial statements. Wolf, then acting as a principal at Kass California, directed and oversaw the 1999 audit of Horizon. In 2000, Kass California entered into a second engagement with Horizon in which Kass was retained to perform audits of Horizon's performance calculations and reporting. Finally, in 2001, Horizon again engaged Kass California to conduct an audit of Horizon's 2000 year-end financial condition. It is undisputed that all of the accounting services rendered by Kass in connection with these various audits were performed by Kass employees in California.

In addition to these agreements between Kass and Horizon for the rendition of independent accounting services, however, Horizon alleged in its complaint that Kass represented that it would perform a more substantial role in serving the investment fund. The complaint noted that Paul A. Henley, CEO of Horizon Capital, Inc. and the progenitor of the Horizon partnership, expressed his view "[a]t the outset" that Horizon did not have the "back office services and systems necessary" to monitor Yu & Company's performance and compliance with its Six Key system. R1-2 at 20, ¶ 58. To address this concern, prior to contracting with

4

Horizon, Wolf allegedly "affirmatively represented to Horizon that Kass would 'watch Norman [Yu], Mark [Yu], and the Yu Company . . . . [,] would provide the 'back office services and systems' for monitoring the Yu Company . . . . [, and] would serve as the watchdog for the partners and Horizon." Id. at 21, ¶ 59. According to the complaint, Kass offered to perform these back office services from its offices outside of Florida by: (1) accessing, monitoring, and managing Horizon's Florida-based accounting system and electronic files through the internet and the computer program *Quickbooks*; and (2) communicating with Horizon officials in Florida about its findings via telephone, faxes, e-mail, and regular mail. See id. at 21, ¶ 61. In his deposition, Wolf confirmed that Kass had represented to Horizon that back office services would be part of the services performed by Kass. See R2-35 at 114. Horizon alleged that it relied on Wolf's representations and operated with the understanding that Kass would perform the back office monitoring and watchdog functions. See R1-2 at 22, ¶ 63.

After Horizon's portfolio sustained substantial losses under the management of Yu & Company, Horizon filed suit against Kass in Florida state court.[3] In its

---

[3] Kass subsequently removed the action to federal court. In addition to filing its complaint in Florida, Horizon also filed similar suits in state courts in California and Georgia. According to the parties, Kass is no longer involved in the Georgia action because Horizon voluntarily dismissed its claims against Kass in the Georgia suit. Kass remains a party, however, in the California action, which has been stayed pending the outcome of an appeal in a separate, but related, California action.

complaint, Horizon alleged, <u>inter alia</u>, that Kass California and Wolf:[4] (1)

committed professional negligence for their failure to perform back office

monitoring and compliance services; (2) breached fiduciary duties they owed to

Horizon by failing to perform the services they agreed to perform; (3) engaged in

constructive fraud by making representations to Horizon with the intent to deceive

and defraud and then failing to perform on their representations; and (4) breached a

written contract by failing to act as an independent auditor and by neglecting to

monitor Yu & Company.  Kass responded by moving for the Florida action to be

dismissed on the grounds that the assertion of personal jurisdiction was

inappropriate under both the Florida Long-Arm statute and a due process analysis.

After conducting a hearing on Kass's motion, the district court dismissed the

claims against Kass because Horizon's allegations did not support the assertion of

jurisdiction under Florida's Long-Arm statute, FLA. STAT. ch. 48.193.[5]

On appeal, Horizon argues that the district court erred in finding that

---

[4] The complaint joined Kass New Jersey and Kass New York as codefendants on the theory that Kass California and Wolf operated as agents and alter egos of Kass New Jersey and Kass New York.  <u>See</u> R1-2 at 5, ¶ 18.  In addition, Kass sued the law firm and one of its partners that drafted the initial partnership offering documents.  The district court severed these law firm defendants from the instant action and transferred the claims against them to federal court in Georgia.  <u>See</u> R2-53 at 1-2, 6.  Horizon does not dispute this part of the district court's order on appeal.

[5] Because the district court concluded the Long-Arm statute was not satisfied, the court declined to analyze whether the assertion of jurisdiction comported with due process.

6

personal jurisdiction was lacking. Specifically, Horizon argues that: (1) Kass was "doing business" as defined in the Long-Arm statute because its electronic access to Horizon's files and its remote management of Horizon's accounting systems allowed Kass employees to perform services as if they were at Horizon's Florida offices; and (2) Kass committed a tortious act in Florida by virtue of alleged misrepresentations made by Kass to Horizon which caused injury to Horizon in Florida. We will address each argument in turn.

## II. DISCUSSION

"We review the district court's dismissal for lack of personal jurisdiction de novo." Meier *ex rel.* Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1268 (11th Cir. 2002). Our analysis of the propriety of the assertion of personal jurisdiction is a two-step inquiry. "First, we determine whether the exercise of jurisdiction is appropriate under the forum state's long-arm statute." Mut. Serv. Ins. Co. v. Frit Indus., Inc., 358 F.3d 1312, 1319 (11th Cir. 2004). "Second, we examine whether the exercise of personal jurisdiction over the defendant would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution, which requires that the defendant have minimum contacts with the forum state and that the exercise of jurisdiction over the defendant does not offend 'traditional notions of fair play and substantial justice.'" Id. (quoting Int'l Shoe Co. v.

7

Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945)).

Florida's Long-Arm statute provides that:

(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself . . . to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
> (a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
> (b) Committing a tortious act within this state.

FLA. STAT. ch. 48.193(1).[6]  Because the construction and application of the Florida Long-Arm statute is a question of Florida law, we are required to construe the Long-Arm provisions as would the Florida Supreme Court.  See Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990).

A.  "Conducting Business" in Florida

"In order to establish that a defendant is 'carrying on business' for the purposes of the long-arm statute, the activities of the defendant must be considered collectively and show a general course of business activity in the state for pecuniary benefit."  Future Tech. Today, Inc. v. OSF Healthcare Sys., 218 F.3d

---

[6] In addition to these provisions relating to the assertion of specific jurisdiction, the Long-Arm statute also provides for general jurisdiction where "[a] defendant . . . is engaged in substantial and not isolated activity within [Florida]." Id. ch. 48.193(2).  The district court found, and the parties do not dispute on appeal, that Kass's activities in Florida would not trigger the general jurisdiction provisions of the Long-Arm statute.

1247, 1249 (11th Cir. 2000) (per curiam). Factors relevant, but not dispositive, to this analysis include the presence and operation of an office in Florida, see Milberg Factors, Inc. v. Greenbaum, 585 So. 2d 1089, 1091 (Fla. Dist. Ct. App. 1991), the possession and maintenance of a license to do business in Florida, see Hobbs v. Don Mealey Chevrolet, Inc., 642 So. 2d 1149, 1153 (Fla. Dist. Ct. App. 1994), the number of Florida clients served, see Milberg Factors, Inc., 585 So. 2d at 1091, and the percentage of overall revenue gleaned from Florida clients, see id.; Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 628 (11th Cir. 1996).

Based on this precedent, we reject Horizon's argument that the assertion of jurisdiction was proper because Kass was doing business in Florida as defined by FLA. STAT. ch. 48.193(1)(a). It is undisputed that neither Kass California nor Wolf maintained a Florida office or were licensed to conduct business in Florida. Horizon admitted that Kass performed all its work for Horizon out of its California offices. While Kass made telephonic and electronic communications from its California offices into Florida, these communications cannot constitute "conducting business" in Florida. See Sculptchair, Inc., 94 F.3d at 628 (finding that making telephone calls from Canada into Florida did not amount to "conducting business" in Florida). Moreover, the fact that Kass rendered in California professional services for the benefit of a Florida citizen was insufficient

9

by itself to trigger the provisions of the Florida Long-Arm statute. See Carlyle v. Palm Beach Polo Holdings, Inc., 842 So. 2d 1013, 1016 (Fla. Dist. Ct. App. 2003) (finding allegations that Michigan-based attorney gave legal advice on Michigan law to a Florida client which was used in ancillary Florida litigation insufficient to satisfy FLA. STAT. ch. 48.193(1)(a)). In addition, Horizon admitted that Kass California had six Florida clients which accounted for, at most, less than five percent of Kass California's gross revenue. Accordingly, based on the factors relevant to a determination of jurisdiction under FLA. STAT. ch. 48.193(1)(a), the record does not support the contention that Kass California was engaging in a general course of business activity in Florida.

Additionally, we reject Horizon's suggestion that the assertion of jurisdiction was appropriate because Kass's ability to electronically access Horizon's Florida-based computer files allowed Kass to perform services as if it was in Florida. The Long-Arm provision requires that a defendant conduct business in Florida, and therefore conducting business from a California office *as if* in Florida is insufficient under the plain text of the statute. Moreover, Horizon's contention that a company's physical location "is rendered irrelevant in this electronic age," Appellant's Br. at 30, belies the fact that state territorial boundaries remain relevant to jurisdictional inquiries. See Burnham v. Superior

10

Court, 495 U.S. 604, 609-610, 110 S. Ct. 2105, 2109-2110 (1990) (citing Pennoyer v. Neff, 95 U.S. 714, 722 (1878)). Accordingly, while the advances of the electronic age have undoubtedly facilitated the practice of interstate and global commerce, they cannot nullify the explicit requirements of the Florida Long-Arm statute. Because Kass physically performed all its work from its California offices, it cannot be argued that its remote access to Horizon's files constituted "conducting business" in Florida as defined in FLA. STAT. ch. 48.193(1)(a).

B. Committing Tortious Act in Florida

The Florida Long-Arm statute also provides for the assertion of jurisdiction over an out-of-state defendant who commits a tortious act in Florida. FLA. STAT. ch. 48.193(1)(b). Florida courts construing this provision have noted that the alleged tortfeasor's "physical presence [in Florida] is not required." Wendt v. Horowitz, 822 So. 2d 1252, 1260 (Fla. 2002). Rather, jurisdiction may be found in certain instances where an out-of-state defendant commits a tort that produces an injury in Florida. See id.[7] For example, allegations about an out-of-state defendant's "telephonic, electronic, or written communications into Florida" are sufficient to trigger jurisdiction under the Long-Arm statute provided, however,

_____

[7] See Korman v. Kent, 821 So. 2d 408, 411 (Fla. Dist. Ct. App. 2002) (noting that Wendt cannot be construed to grant jurisdiction under FLA. STAT. ch. 48.193(1)(b) in every situation where a tort was completed out-of-state but caused injury in Florida).

11

that the cause of action arises from those communications. Id.; see Acquadro v. Bergeron, 851 So. 2d 665, 671 (Fla. 2003) (finding jurisdiction under FLA. STAT. ch. 48.193(1)(b) where an out-of-state defendant allegedly defamed a Florida resident during a phone call made into Florida). Accordingly, there must be some "connexity" that exists between the out-of-state communications and the cause of action such that the cause of action "would depend upon proof of either the existence or the content of any of the communications . . . into Florida." Carlyle, 842 So. 2d at 1017.

Based on this precedent, we find that Horizon made sufficient allegations in its complaint that Kass committed a tortious act in Florida as defined by FLA. STAT. ch. 48.193(1)(b). The district court noted that the general gravamen of the complaint was that Kass allegedly was negligent in failing to perform certain duties, and therefore jurisdiction was lacking under ch. 48.193(1)(b) because the complaint did not allege that any out-of-state communications into Florida were themselves tortious. Our review of the complaint, however, reveals otherwise. After stating that Henley expressed concern about the limitations of Horizon to perform oversight and back office functions, Horizon alleged in its complaint that Wolf, in communications from his California office to Horizon, affirmatively represented that he, and subsequently Kass, would monitor Yu & Company and

12

perform back office services for Horizon. See R1-2 at 21, ¶ 59. In Count III of its complaint, after reincorporating the allegations in paragraph 59, Horizon alleged that these communications were issued "with intent to deceive and defraud Horizon," id. at 55, ¶ 148, and therefore constituted constructive fraud, an intentional tort in Florida, see Alex Hofrichter, P.A. v. Zuckerman & Venditti, P.A., 710 So. 2d 127, 130 (Fla. Dist. Ct. App. 1998). While Kass argues that it made no such representations to Horizon, Horizon met its burden to rebut Kass's denials by offering proof from Wolf's deposition which indicated that Kass had discussed back office services with Henley. See Acquadro, 851 So.2d at 671 (noting that the plaintiff has the burden to offer further evidence to support the allegations in the complaint after the defendant sufficiently challenges by affidavits the allegations supporting jurisdiction in the complaint). Accordingly, regardless of the veracity of Kass's denials on the merits, we conclude that Horizon had satisfied its burden to establish jurisdiction under FLA. STAT. ch. 48.193(1)(b). See Future Tech. Today, Inc., 218 F.3d at 1250 (finding allegations sufficient for jurisdiction but declining to consider the merits of the controversy).

### III. CONCLUSION

In this appeal, we were called upon to consider the reach of the Florida Long-Arm statute, FLA. STAT. ch. 48.193. Based on our review of the complaint

13

and supporting materials submitted by the parties, we have concluded that Horizon had alleged sufficient facts to sustain the assertion of jurisdiction under FLA. STAT. ch. 48.193(1)(b). Accordingly, the district court's grant of Kass's motion to dismiss is **REVERSED**. Because the district court found jurisdiction lacking under the Long-Arm statute, and therefore declined to consider whether the assertion of jurisdiction was consistent with the Due Process Clause of the Fourteenth Amendment, we **REMAND** for further consideration of whether the assertion of jurisdiction over Kass California and Wolf in Florida would violate due process. In addition, provided the district court finds due process is not violated by the assertion of jurisdiction over Kass California and Wolf, we direct the district court to consider on remand Kass's argument that jurisdiction cannot be maintained over Kass New Jersey and Kass New York pursuant to Horizon's alter ego theory. Compare R1-2 at 5, ¶ 18 (alleging in the complaint that Kass California operated as an agent and alter ego for Kass New Jersey and Kass New York), with R1-11 at 5, ¶ 14 (refuting alter ego allegations by affidavit). Finally, we note that the district court is not precluded from considering on remand any change of venue motion that may be subsequently filed. See Insurance Co. of N. Am. v. Ozean/Stinnes-Linien, 367 F.2d 224, 226-227 (5th Cir. 1966) (noting that a district court may entertain a 28 U.S.C. § 1404 change of venue motion after a

14

motion to dismiss for lack of jurisdiction is denied).[8] **REVERSED and**

**REMANDED**.

---

[8] We note that Kass limited its formal motion to dismiss to jurisdictional grounds, see generally R1-9, but argued alternatively in the memorandum of law accompanying the motion to dismiss that the claims against Kass should be transferred to federal court in California pursuant to 28 U.S.C. § 1404, see R1-10 at 22-26. The district court declined to address § 1404 arguments because it dismissed the case for lack of jurisdiction. However, nothing in this opinion should be construed to preclude the district court from considering a § 1404 motion if filed on remand.