[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-12268
Non-Argument Calendar

_____

D. C. Docket No. 0:11-cv-62261-JIC

ROBERT THOMAS,
FREDERICK LAUFER, et. al.,

Plaintiffs-Appellants,

versus

TROY R. BROWN,
GARY S. DESBERG, et. al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(January 23, 2013)

Before CARNES, BARKETT and ANDERSON, Circuit Judges.

PER CURIAM:

Robert Thomas, Frederick Laufer and Bryan Kaufman ("Plaintiffs") appeal the district court's order dismissing their suit for lack of personal jurisdiction. According to the complaint, Plaintiffs are minority shareholders of Apex Radiology Inc. ("Apex"), a Florida corporation. Plaintiffs sued the law firm of Singerman, Mills, Desberg & Kauntz Co., L.P.A. ("Singerman Mills") and eight individual shareholders of Singerman Mills (collectively "Defendants"), alleging numerous claims arising out of Defendants' representation of Apex in a suit against Franklin & Seidelmann, LLC ("F&S").

In July of 2007, Apex entered into an Asset Purchase Agreement to sell all of its assets to F&S. The initial proceeds were to be used to pay down Apex's debts and then distribute funds to shareholders on a pro-rata basis. After three initial payments, F&S made no further payments to Apex. In May of 2008, Wade Rome, the majority shareholder of Apex, hired Defendant Singerman Mills to initiate litigation against F&S for discontinuing payments. This suit was brought in federal court in Ohio. Singerman Mills is an Ohio law firm with a single office in Beachwood, Ohio.

The action between F&S and Apex was ultimately arbitrated in Ohio, and Apex received a net award. Plaintiffs allege that these funds were never divided among the shareholders and they never received any of these proceeds. They

2

allege that Defendants knew or should have known that there was cause for concern about wiring the award to a bank account owned by Rome.

In the present lawsuit filed in the Southern District of Florida, Plaintiffs assert claims for (1) breach of the attorney-client fiduciary duty; (2) breach of fiduciary duty and duty of care; (3) breach of the Ohio Rules of Professional Conduct for not obtaining waivers of conflict; (4) negligence; (5) gross negligence; (6) conspiracy to commit civil theft; and (7) conspiracy to commit civil theft or fraud.

Defendants filed a Motion to Dismiss for Lack of Jurisdiction, and the district court ordered that discovery be conducted. After discovery was complete, the district court granted Defendants' Motion.

The district court held that Florida's long-arm statute did not reach Defendants' conduct. Additionally, even if the long-arm statute did reach Defendants' conduct, Defendants did not have sufficient minimum contacts with Florida to constitutionally subject them to jurisdiction in Florida. After thorough review of the record, we affirm.

I.

We review a district court's dismissal of an action for lack of personal jurisdiction *de novo*. *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir.

3

2008). The plaintiff bears the burden of making out a prima facie case for personal jurisdiction by presenting sufficient evidence to withstand a directed verdict motion. *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006). The defendant then must "raise[ ], through affidavits, documents or testimony a meritorious challenge to personal jurisdiction." *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 627 (11th Cir. 1996) (quotation omitted). Conclusory statements, "although presented in the form of factual declarations, are in substance legal conclusions that do not trigger a duty for Plaintiffs to respond with evidence of their own supporting jurisdiction." *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1215 (11th Cir. 1999).[1] If the defendant provides sufficient evidence, "the burden shifts to the plaintiff to prove jurisdiction by affidavits, testimony or documents." *Sculptchair*, 94 F.3d at 627 (quotation omitted). If the plaintiff's complaint and the defendant's evidence conflict, "the district court must construe all reasonable inferences in favor of the plaintiff." *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990). If the forum's long-arm statute provides jurisdiction over one claim, the district court has personal jurisdiction over the entire case so long as the claims arose from the

---

[1]    We agree with the district court that Plaintiffs' argument that Defendants' affidavits are conclusory and self-serving—and therefore insufficient to rebut the allegations of the Complaint regarding personal jurisdiction—is without merit.

4

same jurisdiction-generating event. *See Cronin v. Washington Nat'l Ins. Co.*, 980 F.2d 663, 671 (11th Cir. 1993).

We apply a two-step inquiry in determining whether the exercise of personal jurisdiction over a nonresident defendant is proper. *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1166 (11th Cir. 2005). First, we examine whether the exercise of jurisdiction would be appropriate under the forum state's long-arm statute. *Id.* Second, we examine "whether the exercise of personal jurisdiction over the defendant would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution, which requires that the defendant have minimum contacts with the forum state and that the exercise of jurisdiction over the defendant does not offend traditional notions of fair play and substantial justice." *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)).

## II.

Here, the district court first held that the court lacked personal jurisdiction under the Florida long-arm statute. See Fla. Stat. §§ 48.193(1)(a), (b), (g), and (2). The district court then held that, even if Florida's long-arm statute reached Defendants' conduct, the Due Process Clause of the United State Constitution prevented it from exercising personal jurisdiction over Defendants. The court

5

found that Defendants lacked meaningful "contacts, ties, or relations" with Florida. *See Int'l Shoe*, 326 U.S. at 319.

We agree with the district court that, even assuming *arguendo* that Florida's long-arm statute reaches Defendants' conduct, the Due Process Clause prohibits Florida courts from exercising jurisdiction over Defendants in this suit.[2]

## A.  Minimum Contacts

The Due Process Clause of the United States Constitution protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful "contacts, ties, or relations." *Id.* at 319.  Where a forum seeks to assert specific personal jurisdiction over a nonresident defendant, due process requires that the defendant have "fair warning" that a particular activity may subject him to the jurisdiction of a foreign sovereign. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).  "This fair warning requirement is satisfied if the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *Licciardello*, 544 F.3d at 1284 (internal quotation marks omitted).  The defendant must have reasonably

---

[2]    Accordingly, we need not address the district court's holding that Florida's long-arm statute does not reach Defendants' conduct.

anticipated being sued in the forum's courts in connection with his activities there. *Burger King Corp.*, 471 U.S. at 474. "Jurisdiction is proper where the defendant's contacts with the forum proximately result from actions by the defendant *himself* that create a substantial connection with the forum state." *Madara*, 916 F.2d at 1516 (internal quotation marks omitted).

Applying these standards to the facts of this case, we hold that Defendants do not have sufficient minimum contacts with the state of Florida. As the district court noted, Defendants have no office, telephone, bank account, or property of any kind in the state of Florida. The evidence is undisputed that Defendants do not market themselves to Florida and did not conduct any matters related to this lawsuit in Florida. *Cf. Sculptchair*, 94 F.3d at 631 (finding minimum contacts partly because defendant "purposefully availed herself of the privilege of conducting business in Florida by marketing . . . products in the state"). The only contacts by Defendants with Florida regarding this lawsuit involved telephone and electronic communications made with Florida-resident Plaintiffs Laufer and Kaufman. Defendants were hired to represent Apex in an action brought in Ohio, and the arbitration proceedings were not conducted in Florida. There is also no evidence that Defendants ever traveled to Florida for anything connected with this matter.

7

Defendants did not purposefully avail themselves of conducting business in Florida.  Defendants did not solicit any work from Apex and were originally contacted to represent Apex by Wade Rome, who was in Missouri, and Apex's counsel, who were in Missouri and Georgia.  During Defendants' representation of Apex, no bills were ever mailed to Florida; instead, they were mailed to Missouri.  There were no legal documents filed in Florida, no legal documents signed in Florida, no hearings in Florida, no depositions taken in Florida, and the arbitration proceedings took place in Ohio.  *Cf. Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 259 (11th Cir. 1996) (finding minimum contacts for nonresident attorney and accountant when, *inter alia*, defendants knew that the will would be probated, and the trust administered, in Florida and mailed all correspondence to the decedent in Florida).

Plaintiffs argue that this case is similar to *Sculptchair, Inc. v. Century Arts, Ltd*.  In *Sculptchair*, this Court found that minimum contacts existed to justify hauling two defendants into a Florida court.  94 F.3d at 631.  But Plaintiffs' case here is factually distinct.  In *Sculptchair*, the plaintiff was the owner and president of a Florida company marketing, selling, and leasing a type of chair cover.  *Id.* at 625-26.  One of the defendants personally contacted the plaintiff seeking to obtain an exclusive licensing agreement to manufacture and market these chair covers in

8

Canada. *Id.* at 626. This agreement was ultimately signed in Florida, and two of the defendants traveled from Canada to Florida to finalize the deal. *Id.* Months later, another defendant traveled from Canada to Florida for a four day "logistical meeting" with the plaintiff. *Id.* This Court found sufficient minimum contacts to bring the defendant corporation and an individual associated with the corporation into court in Florida. It was undisputed that the corporation "reached out" to Florida. *Id.* at 631. Defendants had also structured the agreement, "envisioning continuing and wide-reaching contacts with Sculptchair in Florida by seeking the exclusive licensing agreement." *Id.* (internal quotation marks omitted).

Here, Defendants did not reach out to Plaintiffs seeking representation; they never traveled to Florida in relation to this case; and there were no papers or agreements signed or filed in Florida. This minimal contact with Florida is not the type that would "lead a person to reasonably expect the possibility of ensuing litigation in a Florida court should some type of dissatisfaction or complications arise." *Id.* The fact that Apex is a Florida corporation and that Defendants spoke on the phone with Apex shareholders in Florida does not establish that Defendants would have "fair warning" that their activities related to this matter would subject them to the jurisdiction of Florida. *Cf. Burger King Corp.*, 471 U.S. at 472. Accordingly, we conclude that Defendants do not have sufficient minimum

9

contacts with the state of Florida.

## B.

Because we conclude that Defendants do not have minimum contacts with Florida, we need not address whether the exercise of jurisdiction would offend "traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316.

## III.

For the foregoing reasons, we affirm the district court's grant of Defendants' Motion to Dismiss for Lack of Personal Jurisdiction.

**AFFIRMED.**

10