JAMES I. COHN, United States District Judge
THIS CAUSE is before the Court on the Motions to Dismiss [DE 63-83] (the "Motions") filed by Nautical Corp. ("Nautical"), a Defendant and claimant of the Defendant vessel, the M/Y WAKU ("Vessel"). The Court has considered the Motions, Plaintiff's and Intervening Plaintiffs' (collectively, "Plaintiffs") Responses [DE 93-112], Nautical's Replies [DE 113-121; 123-133], and the record in this case, and is otherwise advised in the premises. For the reasons stated herein, the Court will grant the Motions.
I. Background
On December 6, 2018, Plaintiff Versilia Supply Service SRL ("Versilia") commenced this action by asserting an in rem claim to enforce a maritime lien against the Vessel, a 2016 model 209-foot Azimut Benetti motor yacht. DE 1. Versilia, a yacht supply and support company, alleged that it was owed $ 48,376.45 for services and necessaries that it provided to the Vessel. Id. ¶¶ 7, 9-10. Subsequently, the Court permitted numerous other companies and individuals with in rem liens against the Vessel to intervene in this action. See DE 5, 14, 21, 25, 35, 50, and 122. Intervening Plaintiffs include: (1) other yacht supply companies with maritime liens against the Vessel for allegedly unpaid necessaries (collectively with Versilia, the "Supply Companies"), DE 6, 15-18, and 22-23;[1] and (2) seamen who worked aboard the Vessel and are allegedly owed unpaid wages (the "Crew Members"). DE 26, 37-40, 42-43, 45, 47, 51-54. In addition to their in rem claims against the Vessel, the Crew Members also assert in personam claims against Nautical for breaches of maritime employment contracts and breaches of oral agreements. Nautical is a Cayman Islands corporation that owns and operates the Vessel.
Nautical has moved to dismiss Versilia's Complaint and the Intervening Complaints of the Supply Companies and the Crew Members. Nautical raises two arguments.
*1146 First, Nautical asserts that the Foreign Narcotics Kingpin Designation Act ("Kingpin Act"), 21 U.S.C. §§ 1901 - 1908, and the Foreign Narcotics Kingpin Sanctions Regulations ("Kingpin Regulations"), 31 C.F.R. §§ 598.001- .901, preclude Plaintiffs from seeking to arrest the Vessel to enforce their alleged liens. Second, Nautical claims that it is not subject to in personam jurisdiction in Florida.
II. Discussion
A. The Kingpin Act and Regulations
Congress enacted the Kingpin Act in 1999. The purpose of the Kingpin Act is "to provide authority for the identification of, and application of sanctions on a worldwide basis to, significant foreign narcotics traffickers, their organizations, and the foreign persons who provide support to those significant foreign narcotics traffickers and their organizations, whose activities threaten the national security, foreign policy, and economy of the United States." 21 U.S.C. § 1902.
The Kingpin Act authorizes the designation of foreign persons that "play[ ] a significant role in international narcotics trafficking,"id. § 1907(7), as "significant foreign narcotics traffickers." Id. § 1903(b). In addition, it permits the designation of foreign persons who "materially assist[ ] in ... the international narcotics trafficking activities" of significant foreign narcotics traffickers or are "owned, controlled, or directed by" those traffickers as "specially designated narcotics traffickers." 21 U.S.C. § 1904(b)(2)-(4) ; 31 C.F.R. § 598.314. Persons and entities designated under the Kingpin Act "are added to the 'Specially Designated Nationals and Blocked Persons List,' 31 C.F.R. § 501.807(a), and all their assets in the United States or under the control of any person who is in the United States are 'block[ed],' 21 U.S.C. § 1904(b), or effectively frozen." Zevallos v. Obama, 793 F.3d 106, 110 (D.C. Cir. 2015) (alteration in original).
"The Kingpin Act ... according to its text and accompanying regulations, requires the procurement of a government-issued license before private individuals may execute against assets frozen under the Act." Stansell v. Revolutionary Armed Forces of Colombia, 704 F.3d 910, 916 (11th Cir. 2013). United States citizens and residents are prohibited from transacting or dealing in blocked property "[e]xcept to the extent provided in ... licenses, or directives issued pursuant to [the Kingpin Act.]" 21 U.S.C. § 1904(c). The Kingpin Regulations also render "null and void" any "transfer" that violates the Regulations and "involves any property or interest in property of a specially designated narcotics trafficker." 31 C.F.R. § 598.205(a). "Transfer" is defined broadly to mean "any actual or purported act or transaction ... the purpose, intent, or effect of which is to create, surrender, release, convey, transfer, or alter, directly or indirectly, any right, remedy, power, privilege, or interest with respect to any property." Id. § 598.316. The term "transfer" also specifically includes "the creation or transfer of any lien; the issuance, docketing, filing, or levy of or under any judgment, decree, attachment, injunction, execution, or other judicial or administrative process or order." Id.
B. The Kingpin Act Bars Plaintiffs' in rem Claims Against the Vessel
Nautical is ultimately owned by Mr. Samark Lopez Bello, a citizen of Venezuela. On February 13, 2017, the Office of Foreign Assets Control ("OFAC")-the Treasury Department agency that implements and administers the Kingpin Regulations-designated Mr. Lopez as a specially designated narcotics trafficker *1147 ("SDNT") under the Kingpin Act and Regulations. Notice of this designation was published in the Federal Register on February 17, 2017. 82 Fed. Reg. 11101-01. Mr. Lopez's SDNT designation rendered his property and property interests in the U.S., including the Vessel, see DE 62-1, "blocked property" under the Kingpin Act and Regulations. Nautical thus argues that because Plaintiffs have failed to secure a license from the OFAC,[2] Plaintiffs' in rem claims against the Vessel should be dismissed because they are barred by the Kingpin Act and because any Court orders enforcing their alleged maritime liens against the Vessel would be null and void.
Plaintiffs argue that it would be "improper and unjust" to dismiss their in rem claims because: (1) their maritime liens pre-date Mr. Lopez's SDNT designation, see, e.g., DE 93 at 11 ("ANDREW's maritime lien attached to the Vessel upon his employment aboard the M/Y WAKU, pursuant to his Crew Agreement and previous to the establishment of any OFAC block."); (2) they were "without knowledge as to the allegations faced by Mr. Lopez or his designation as an SDNT," id.; and (3) because Nautical cannot "use the Kingpin Act as a shield" to prevent the sale of the Vessel. Id. at 4. Plaintiffs also appear to suggest that their in rem claims should be allowed to proceed because in October of 2018, the OFAC granted a license to the law firm of Archer & Greiner, P.C. (attorneys apparently representing Mr. Lopez in other matters) and Mr. Eric Castillo, former Yacht Manager of the Vessel, to "pay the expenses, including past due amounts, ordinarily incident to the maintenance and limited operation of [the Vessel.]" Id. at 5-6.
Were the Court simply adjudicating, in a vacuum, what was fair in this case, then Plaintiffs' arguments would carry significant weight. But the Court cannot disregard the Kingpin Act and Regulations merely because Plaintiffs believe that they lead to an "improper and unjust" result here. Plaintiffs do not dispute that the Vessel is blocked property under the Kingpin Act and that they have failed to obtain a license from the OFAC to execute against the Vessel. That ends the inquiry. See, e.g., Stansell, 704 F.3d at 916 ("The Kingpin Act ... according to its text and accompanying regulations, requires the procurement of a government-issued license before private individuals may execute against assets frozen under the Act.").
Plaintiffs offer no authority suggesting that their claims should be permitted to proceed despite their failure to obtain a license from the OFAC. It is irrelevant whether or not Plaintiffs' alleged maritime liens attached prior to Mr. Lopez's SDNT designation. The Kingpin Act and Regulations preclude "transfers" after "the date on which actual or constructive notice of [that] designation is received." See 31 C.F.R. § 598.302. Plaintiffs do not dispute that they are charged with constructive notice of Mr. Lopez's SDNT designation at least since February 17, 2017. Even assuming that Plaintiffs' maritime liens all attached prior to that date, what matters is that now, over two years after Mr. Lopez's SDNT designation, Plaintiffs are prohibited from enforcing those liens and "any judgment, decree, attachment, injunction, execution, or other judicial or administrative process or order" that the Court issues to enforce those maritime liens will be null and void. 31 C.F.R. § 598.205(a).
*1148 The fact that the OFAC has issued a license to Archer & Greiner, P.C. and Mr. Castillo does not alter this conclusion. As Nautical notes, that license "does not in any way discuss or permit the transfer of title or other ownership interest in the Vessel." DE 113 at 3. Simply put, the issue here is not whether Mr. Lopez's representatives are authorized to pay expenses related to the maintenance and operation of the Vessel. The issue is whether, if Mr. Lopez's representatives fail to pay those expenses, Plaintiffs are permitted to enforce their maritime liens against the Vessel. Without a license from the OFAC, they are plainly not.
C. The Court Lacks Personal Jurisdiction Over Nautical
As noted above, the Crew Members also assert, in addition to their in rem claims against the Vessel, in personam claims against Nautical for breaches of maritime employment contracts and breaches of oral agreements. Essentially, they claim that Nautical failed to pay full wages as provided for in written Crew Agreements and failed to pay additional, supplemental wages allegedly orally promised by the Vessel Captain, Captain Joe Williams, after the crew had gone unpaid for over a month. Nautical, a Cayman Islands corporation, asserts that it lacks sufficient contacts with Florida to be subject to in personam jurisdiction in Florida.
The Crew Members' Intervening Complaints are less than clear as to Nautical's contacts with Florida. The Crew Members generally allege that Nautical "engaged in and conducted business transactions in the state of Florida," see DE 26 ¶ 5, but the only specific allegations of business transacted by Nautical in Florida relate to the maintenance and operation of the Vessel. The Crew Members allege that Nautical: (1) operated the Vessel and other unspecified vessels in Florida; (2) contracted with the Crew Members "for work performed in the State of Florida;" (3) breached the agreements with the Crew Members in Florida by failing to pay wages; and (4) "enter[ed] into contracts and/or transactional agreements for the provision of products and services provided to or related to [the Vessel] with wholesalers, distributors, and even crew within [Florida.]" Id. ¶¶ 6-7.
The Court must conduct a two-step inquiry to determine if personal jurisdiction exists over Nautical. United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009). The court must first determine if jurisdiction is authorized by Florida's long-arm statute. If it is, the court must then decide whether the exercise of jurisdiction over Nautical would violate the Due Process Clause of the Fourteenth Amendment. Id. The Crew Members bear the initial burden of pleading facts sufficient to demonstrate a prima facie case of personal jurisdiction over Nautical. A prima facie case requires enough evidence to withstand a motion for a directed verdict. Meier ex rel. Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1268-69 (11th Cir. 2002).
Florida's long-arm statute provides in relevant part that a non-resident is subject to jurisdiction in Florida for "any cause of action arising from any" one of the following acts:
(1) Operating, conducting, engaging in, or carrying on a business or business venture in this state ... [or]
(7) Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state.
Fla. Stat. § 48.193(1)(a)(1), (7). The Crew Members argue that Nautical satisfies both of these provisions of the long-arm statute.
*1149 First, the Court finds that the Crew Members clearly cannot satisfy the provision of the long-arm statute covering defendants alleged to have breached a contract in Florida. Courts have repeatedly explained that "[t]his provision means that there must exist a duty to perform an act in Florida ; a contractual duty to tender performance to a Florida resident is not in itself sufficient to satisfy the statute." Posner v. Essex Ins. Co., Ltd., 178 F.3d 1209, 1218 (11th Cir. 1999). See also Olson v. Robbie, 141 So.3d 636, 640 (Fla. 4th DCA 2014) (noting that this provision of the long-arm statute "must be strictly construed" and that "[i]t is not enough that a foreign defendant merely contract with a Florida resident, or that performance under the contract could have been made in Florida; rather, the contract itself must require performance in Florida in order to invoke Florida jurisdiction under section 48.193(1)(g)."). The Crew Members have not alleged that Nautical was required to pay wages to them in Florida, and the Crew Agreements attached to their Intervening Complaints do not impose such a duty.
While it is a closer call, the Court finds that the Crew Members have also failed to sufficiently demonstrate that Nautical is "carrying on a business" in Florida. "In order to establish that a defendant is 'carrying on business' for the purposes of [Florida's] long-arm statute, the activities of the defendant must be considered collectively and show a general course of business activity in the state for pecuniary benefit." RMS Titanic, Inc. v. Kingsmen Creatives, Ltd., 579 Fed. Appx. 779, 783 (11th Cir. 2014) (quoting Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A., 421 F.3d 1162, 1167 (11th Cir.2005) ). Factors to consider in making this determination "include: (1) 'the presence and operation of an office in Florida'; (2) 'the possession and maintenance of a license to do business in Florida'; (3) 'the number of Florida clients served'; and (4) 'the percentage of overall revenue gleaned from Florida clients.' " Id. at 784 (quoting Horizon Aggressive Growth, 421 F.3d at 1167 ).
Here, the Crew Members merely allege that Nautical maintained and operated the Vessel in Florida. The Court finds that without more, this is insufficient to show "a general course of business activity in the state for pecuniary benefit." Notably absent from the Complaint and Intervening Complaints are any allegations that Nautical operated the Vessel for profit. See, e.g., Stonepeak Partners, LP v. Tall Tower Capital, LLC, 231 So.3d 548, 557 (Fla. 2d DCA 2017) ("The intent of the long-arm statute is 'to regard nonresidents who have availed themselves of the privilege of dealing in goods, services, or property, whether in a professional or nonprofessional capacity, within the State in anticipation of economic gain , as operating a business or business venture.' ") (quoting Labbee v. Harrington, 913 So.2d 679, 683 (Fla. 3d DCA 2005) ) (emphasis added). In other words, the Court does not doubt that a plaintiff could hypothetically satisfy the "carrying on a business" long-arm provision as to a defendant that operated a single yacht in Florida if, for instance, the defendant at least occasionally chartered the yacht for profit. See, e.g., Labbee v. Harrington, 913 So.2d 679, 683 (Fla. 3d DCA 2005) ("engaging in a single act for profit can amount to a business venture."). But Plaintiffs make no such allegation here.
Because the Court concludes that the Crew Members have not established through their allegations that Nautical is subject to personal jurisdiction under Florida's long-arm statute, the Court need not analyze whether personal jurisdiction is *1150 consistent with the Due Process Clause of the Constitution.
III. Conclusion
For the foregoing reasons, it is hereby ORDERED AND ADJUDGED as follows:
1. Nautical Corp.'s Motions to Dismiss [DE 63-83] are GRANTED ;
2. Plaintiff Versilia Supply Service SRL's Complaint [DE 1] is DISMISSED without prejudice ; and
3. Intervening Plaintiffs' Intervening Complaints [DE 6, 15-18, 22-23, 26, 37-40, 42-43, 45, 47, 51-54] are DISMISSED without prejudice .[3]
DONE AND ORDERED in Chambers at Fort Lauderdale, Broward County, Florida, this 16th day of April, 2019.

Intervening Plaintiff Dania Cut Super Yacht Repair, Inc. ("Dania Cut") also seeks to enforce a maritime lien against the Vessel for unpaid necessaries, see DE 134, but as of the date of this Order, Nautical has not sought dismissal of Dania Cut's Intervenor Complaint.

"Under the Kingpin Act and Regulations, the OFAC has authority to grant licenses to access blocked assets." World Fuel Corp. v. Geithner, 568 F.3d 1345, 1347 (11th Cir. 2009)

As noted above, the Intervening Complaint filed by Intervening Plaintiff Dania Cut Super Yacht Repair, Inc. [DE 134] remains pending.